[McKissack v. McClendon *et al.*]

# McKissack *v.* McClendon *et al.*

### *Action for Breach of Sheriff's Bond.*

1. *Sheriff; sufficient execunon of sheriff's bond.*—Where a sheriff, before entering upon the discharge of his duties as such officer, prepares his official bond, writing his name and the name of his sureties in the body of the bond, but through oversight fails to sign the bond as principal obligor, though the same was signed by his sureties, and the bond so filled out and signed was by said sheriff delivered to the probate judge and was approved and recorded by him as said sheriff's official bond, and he, thereupon, entered upon the discharge of his duties as such sheriff under said bond, and acted as said sheriff, such bond, as to the sureties signing it stands, under the provisions of the statute, (Code, § 3089) in the place of the official bond of the sheriff subject, if its conditions are broken, to all the remedies which the person aggrieved might have maintained on the official bond of such sheriff, executed, approved and filed according to law. (TYSON, J., *dissenting.*)

APPEAL from the Circuit Court of Henry.

Tried before the Hon. JOHN P. HUBBARD.

This action was brought by the appellant, R. L. McKissack, against the appellee, W. A. McClendon, as sheriff and the sureties on his official bond and sought to recover for the breach of a bond in making a wrongful levy of writs of attachment upon the property in the possession of the plaintiff. The defendant pleaded the general issue and several special pleas. The facts of the case necessary to an understanding of the decision on the present appeal are sufficiently stated in the opinion.

Upon the introduction of all the evidence the court, at the request of the defendants, instructed the jury as follows· "If the jury believe the evidence, they must find for the defendants." To the giving of this charge the plaintiff duly excepted.

There were verdict and judgment for the defendants. The plaintiff appeals, and assigns as error the

giving of the general affirmative charge requested by the defendant.

WILLIAM C. OATES and WALKER & THOMPSON, for appellants, cited Code of 1896, §§ 3087, 3089, 3090; *State v. Flynn,* 77 Ala. 100; *Hall v. LaFayette Co.,* 69 Miss. 530; *McLeod v. State,* 69 Miss. 221; *Painter v. Mauldin,* 119 Ala. 89; *City v. Moore,* 86 Me. 181.

H. A. PEARCE, W. W. SANDERS and SOLLIE & KIRKLAND, *contra.*—The bond or instrument, the basis of the suit, is not a statutory bond, nor does it come within the cases mentioned in sections 3089 and 3090 of the Code.—*Painter v. Mauldin,* 119 Ala. 88; *Lewis v. Lee County,* 66 Ala. 480; *Gay v. Murphy,* 56 Am. St. Rep. 496; *Board v. Sweeney,* 1 S. D. 642.

DOWDELL, J.—This is an action against the sheriff on his bond as such for the breach of said bond. There is but one question in the case, and that is, whether the obligors in said bond are liable on said bond as a statutory bond.

The defense is rested upon the fact of the failure of the sheriff, McClendon, the principal obligor, to sign the bond.

The facts show that the defendant, McClendon, before entering upon the discharge of his duties as sheriff, to which office he had been elected, procured and obtained from the judge of probate a form, or blank bond, to be filled out by him as his official bond, and executed with proper sureties; that he filled out said bond, writing his own name three times, and the names of the sureties in the body of the bond, but through oversight failed to sign the bond as principal obligor, though the same was signed by the appellees here as sureties; that the bond so filled out and signed, was by the said McClendon delivered to the probate judge for approval as the said sheriff's official bond, and was duly approved and recorded by the probate judge of Henry county; that said McClendon entered upon the discharge of his duties as such sheriff, having otherwise qualified by taking the oath of office, under said bond, and acted as sheriff

and was acting as such under said bond, at the time of the breach complained of.

In *Sprowl v. Lawrence*, 33 Ala. 674, which like the present case, was an action on the sheriff's bond, and where the bond had not been filed and approved as required by the statute, it was said by this court, in construing section 132 of the Code of 1852, being the same as section 3089 of the present Code (also sections 120 and 126 of the former Code, which are the same as sections 3072 and 3073 of the present Code) : "An examination of the various provisions of the Code, in reference to the bonds of public officers, will satisfy any one of the studious solicitude with which the legislature has sought to afford the most ample protection to all persons interested in the performance by such officers of their official duties. The section we are considering is a part of the legislation designed to effect this general object; and it is our duty to put upon it such a construction, as will harmonize with the substance and spirit of the text to which it belongs. It is a remedial statute; and we must construe it largely and beneficially, so as to suppress the mischief and advance the remedy; or in the language of Lord COKE, so as 'to add force and life to the cure and remedy, according to the true intent of the makers of the act, *pro bono publico*'"; citing *Heydon's case*, 3 Rep. 7; Sedgwick on Statutes, 359-60. "It must be admitted that the words of this section, [§ 132, Code, 1852, § 3089, Code, 1896] are not as clear and precise as they might be; and it is a well settled rule, that when the words are not precise and clear, such construction will be adopted as shall appear the most reasonable, and best suited to accomplish the object of the statute; and a construction which would lead to an absurdity ought to be rejected."

In that case it was argued by counsel, as here, that inasmuch as the bond was in the penalty, payable and conditioned, with sureties of requisite qualification and sufficiency, as prescribed by law, the defect, namely : (in that case) that it was not "approved and filed according to law," (in the present case) that the bond was not signed by the principal obligor (the sheriff), was not one of the defects or omissions specified in the

statute, and consequently did not fall within the provisions of that statute. Without reiterating what was said in *Sprowl v. Lawrence, arguendo* in response to the insistence of counsel, we further quote from that case on page 687, where it was said in conclusion on that proposition: "This section, therefore, in our judgment, applies to a bond which does not conform to any of the statutory requirements, either as to its penalty, payee, conditions, approval, or filing, provided the officer executing it has acted under it. Much more clearly does it apply to a bond which the officer executing it has acted under, and which does conform to all the requirements of the law, except the last two—approval and filing. To hold otherwise, would be to maintain the paradox, that the validity of the bond is enhanced by its increased imperfections—that a total is less hurtful than a partial departure from the statute, and that an instrument in fact gets better as it grows worse." The approval and filing is as much a requirement of the statute, as the signing by the sheriff, the principal obligor, and yet neither is among the omissions specified in the section. The fact, that the sheriff acted under the bond as his official bond, is made the controlling principle under the reasoning employed in *Sprowl v. Lawrence, supra.* We can see no difference in principle between that case and the one at bar.

In *Steele v. Tutwiler,* 68 Ala. 107, the court, after citing approvingly *Sprowl v. Lawrence, supra,* says: "We construe the phrase then, 'a bond, which is not *payable* or *conditioned* as prescribed by law,' as having reference to irregularities or imperfections in both the *body* and the *condition* of the bond; and as there can be no legal bond at all without signatures, the statute has, also, necessary reference to any want of formality, or imperfection, in the execution or signing by the obligors." The summary proceeding in that case on the bond was sustained.

Under the principle laid down in these cases, our conclusion is, that the bond here, as to the sureties signing it, stands in the place of the official bond of the sheriff, subject on its condition being broken to all the remedies which the person aggrieved might have maintained on

the official bond of such officer, executed, approved and filed according to law.—§ 3089.

The case of *Painter v. Mauldin*, 119 Ala. 88, where the guardian's bond was held not to be a statutory bond, but good as a common law obligation, as to the sureties, is distinguishable from the present case, in this, that a guardian's bond does not fall within the provisions of section 3089.

It is of no consequence that the sureties did not know of the failure of the sheriff to sign said bond, and that he was acting under it, without having first signed the same. They signed it for the purpose of his acting under it, and he having acted under it, they became bound by it.

The court erred in giving the general charge requested by the appellees, and for this error the judgment will be reversed and the cause remanded.

TYSON, J., *dissenting.*—While I concur in a reversal of the judgment in the cause, I cannot assent to the principles announced in the opinion of the other members of the court. They hold the sureties upon the bond sued upon liable, and exonerate their principal from liability on the ground that he did not sign the bond. And this they do by virtue of section 3089 of the Code. They impliedly concede that were it not for the provosions of that statute, that the sureties could not be held liable, thus recognizing the principle that a surety is never answerable upon an undertaking unless his principal is bound thereby—a principle thoroughly settled by the decisions of this court. In *Evans v. Keeland*, 9 Ala. 46, it is said : "The contract of suretyship has been defined to be, a contract whereby one person engages to be answerable for the debt, default, or miscarriage of another. It is an obligation *accessorial* to that of the principal debtor : the debt is due from the principal, and the surety is merely a guarantor for its payment. * * * A corollary from this definition is, that it is of the essence of such a contract, that there be a valid obligation of the principal debtor. And as upon a recovery by the creditor against the surety, he could reimburse himself by a suit against his principal, it also results necessarily that the

surety may, in general, make any defense which his principal could make." See also *White v. L. Asso. of America*, 63 Ala. 424; *State v. Parker*, 72 Ala. 183. The holding of the majority of the court followed to its logical conclusion, necessarily results in imposing a liability upon the sureties never contracted by them and leaving them without a right of reimbursement from their principal. In other words, if they have no principal, they have no right to reimbursement. It destroys an essential element of the contract of suretyship and makes the sureties liable as principal—an obligation never assumed by them. Neither of the cases which they cite and quote from in support of their contention, go to the length that they have gone in this case. In both of those cases, the bond was signed by the principal. Indeed, in *Sprowl v. Lawrence*, the learned judge was careful not to extend the provision of the statute to a bond which the officer had not signed, as is clearly shown by the exception engrafted by him upon the general doctrine he announced. For he says: "This section, therefore, in our judgment, applies to a bond which does not conform to any of the statutory requirements, either as to its penalty, payee, conditions, approval or filing, *provided*, the officer *executing* it has acted under it." That this is the proper construction of the statute is made apparent from its language. It reads: "Whenever any officer required by law to give an official bond, acts under a *bond* which is not in the penalty," etc. How can it be said that an officer acts under a bond when he has never executed it? It is no bond at all unless it is signed by a principal. And this is made the plainer when we read further in the statute this language: "Such bond is valid and binding on the obligors therein." Again we have at least an implied, if not an express, recognition that there must be an official bond with obligors on it. And as said above if the principal did not sign it, we have no bond and no obligors. For by no rule of construction can the statute be converted into an instrument for the purpose of creating a bond which has never been executed. Furthermore it seems to me entirely clear that the words "such bond" mean official bond. How is it possible to have an official bond when the official whose

duty it is to give it has never signed it? My conclusion, therefore, is, that unless the principal is bound, the sureties are not.

But I do not concur in the opinion that McClendon, the principal, is not bound. It is clear to my mind that upon the facts stated in the opinion of the majority of the court, as to whether he signed the bond is a question which should be submitted to the jury. It is of no importance that he did not affix his name at the bottom of it. He is only required to "give bond with surety," no formality as to its execution being prescribed by the statute.—§ 3735 of Code. Nor is a seal necessary to its efficaciousness.—§ 9 of Code. In regard to the place of signature, there is no restriction. It may be at the top, or in the body, as well as at the foot. The material question is, whether or not he wrote his name in the body of the bond with the intention to be bound by it. It is true, it may be, that if he intended a further signature at the bottom, and this fact appeared beyond adverse inference, that the court would be at liberty to say, as matter of law, that he had not executed it. But in the absence of any legal testimony showing that he intended a further signature, it cannot be affirmed as matter of law under the facts of this case that he did not intend when he wrote his name in the body of the bond, that his act in doing so should not be his signature—a signing of it by him. And indeed, if the record contained positive evidence that he intended to affix his name at the bottom as a final signature, as to whether he signed it would still be a question for the jury under the facts of this case, for the obvious reason that notwithstanding this positive evidence, the jury would have the right to infer from his acts and conduct, in writing the bond himself, procuring the sureties to sign it, delivering it as his act and deed to the probate judge, and acting under it as though it had been formally executed by him, that he intended by the act of writing his name in the body of it, to be his signature. In *Penniman v. Hartshorn,* 13 Mass. 87, one of the questions involved was whether the contract for the sale of merchandise was a sufficient memorandum in writing, signed by the defendant, so as to satisfy the

second section of the statute of frauds of that State, which provided that "no contract for the sale of any goods, etc. for the price of ten pounds or more shall be allowed to be good, except the purchaser shall accept part of the goods so sold and actually receive the same, or giving something in earnest to bind the bargain, or in part payment, or that some note or memorandum in writing of said bargain be made and signed by the parties to be charged by such contract, or their agents thereunto lawfully authorized." The memorandum was signed at the top instead of at the bottom by the purchasers of the goods, who were sued by the seller in assumpsit for a breach of the contract, and this was made the basis of the objection to it. The court said, after stating the ground of objection: "But we think this a slight objection; as it is well known that such a signing has been held good in instruments of much more importance and solemnity than the one before us." In *Saunderson v. Jackson,* 2 B. & P., Lord ELDON held, that a bill of parcels in which the vendor's name is printed in the body, delivered to the vendee by him at the time of an order given for the future delivery of goods, was a sufficient memorandum of the contract within the statute of frauds. In *Johnson v. Dodgson,* 2 M. & W., *p. 660, Lord ABINGER said: "The cases have decided that, although the signature be in the beginning or middle of the instrument, it is as binding as if at the foot of it; the question being always open to the jury, whether the party not having signed it regularly at the foot, meant to be bound by it as it stood, or whether it was left so unsigned because he refused to complete it." In *Holmes v. Mackrell,* 3 Common Bench Rep. (N. S.), *p. 789, COCKBURN; C. J., said: "The only question that remains is, whether there is sufficient signature. The defendant does not, it is true, put his name at the bottom of the document. But the whole is in his handwriting, and he has affixed his name at the top. I entertain no doubt that this is a sufficient signature." In *Ogilvie v. Foljambe,* 3 Merivale, 52, the name of the party attempted to be charged was written in the body of the paper by himself as here, and the court held that it was a sufficient signing, as "it does not matter in what part of the instru-

ment the name is found." In *Schneider v. Norris*, 2 M. & S. 286, Lord ELLENBOROUGH held that a bill of parcel in which the name of the vendor is printed and that of the vendee written, was a sufficient signing by the vendor. In *Knight v. Crockford*, 1 Esp. 190, the agreement sought to be enforced was written by the party attempted to be charged, and was in this language: "I, James Crockford, agree," etc. The court held it a sufficient signing by Crockford. In *Higdon v. Thomas*, 1 H. & G. (Md.) 139, in a very learned and exhaustive opinion in which all the cases are reviewed, the court held: "A bond which recited the names of the parties to, and the terms of a contract for the sale of land, and contained a condition to secure a performance of such contract prepared and written by the vendee, who was also the obligee of the bond, executed by an agent of the vendor, and delivered by him to the vendee," was a sufficient signing by the vendee. In *Clason v. Bailey*, 14 Johns. (N. Y.) 484, the defendant's name only appeared in the body of the agreement, which was written by his authorized agent. The court held that he had signed it. In *McConnell v. Brillhart*, 17 Ill. 354, a bill was filed to enforce the specific performance of a contract relating to lands. The court said: "The signing will be sufficient in the caption, or body of the memorandum, or by a subscription to it." In *Wise v. Ray*, 3 Green (Iowa), 430, it was held, where an instrument was written by R. and subscribed by W. and stipulates that W. has sold and agreed to deliver pork to R. at the place and price mentioned in the undertaking, that R. was bound; the signature in the body being written there by him. The same doctrine was recognized in the case of *McMillen v. Terrell*, 23 Ind. 163, and recognized and enforced by the Supreme Court of the United States in *Barry v. Coombe*, 1 Peters, 640. See also Browne on Statute of Frauds, (5th ed.), § 357; 2 Bouv. Law Dict. p. 1001; Roberts on Frauds, *p. 125, top p. 125; 1 Green. on Ev. (16th ed.), Appendix 2, § 268, p. 855; 8 Am. & Eng. Ency. Law (1st ed.), 717.