144 So. 532

## ROYAL INDEMNITY CO. v. YOUNG & VANN SUPPLY CO. et al.

### 7 Div. 38.

Supreme Court of Alabama.

Oct. 6, 1932.

Appellant's Rehearing Denied Nov. 10, 1932.

Appellee's Rehearing Granted Nov. 10, 1932.

J. P. Mudd, of Birmingham, for appellant.

John S. Coleman, Kingman C. Shelburne, and Bradley, Baldwin, All & White, all of Birmingham, for appellee Kroell.

J. Edgar Bowron, of Birmingham, for appellee Birmingham Slag Co.

BOULDIN, J.

The suit is on a contractor's bond given to secure the performance of the obligations of a contract with the town of Montevallo for the construction of street improvements. General Acts of 1927, § 28, p. 356 et seq.; General Acts of 1927, p. 37.

The present appeals are taken by Royal Indemnity Company, surety on the bond, to review the judgments in favor of P. J. Kroell and Birmingham Slag Company, severally, both of whom were materialmen and interveners in the suit which was begun by Young & Vann Supply Company.

Many assignments of error and arguments thereon were addressed to the rulings of the trial court on certain pleas in abatement raising the following questions: The premature bringing of the suit because in advance of a final settlement between the municipality and the contractor; the venue of the suit as to the surety, a foreign corporation; the suit being brought in the county where the work was performed as prescribed by the statutes, supra, but alleged to be violative of section 232 of the Constitution, requiring a suit against a foreign corporation to be brought in a county where it does business; and further pleas of other suits pending, or judgments rendered for plaintiff therein prior to the trial in this cause. We may note it appears the present suit was first in point of time.

But all these defenses went to the right to maintain the original suit of Young & Vann Supply Company, to which the interveners became parties by intervention.

Such defenses were all disposed of adversely to appellant, and judgment rendered for the original plaintiff, Young & Vann Supply Company. This judgment stands unreversed, and is not appealed from. This judgment is res adjudicata and conclusive on

all parties to the suit as to all such matter in abatement.

If the venue plea in abatement of the original suit had been sustained, all the interventions would have also gone out of court, subject, of course, to the right of any party aggrieved to prosecute an appeal.

Whether, by amendment, an intervention could be treated as the initial suit is not involved and not decided.

This statutory system of one suit on the bond, wherein all claimants must intervene and become parties, cannot accomplish its purpose if a judgment in the original suit adjudicating that it is the one suit properly brought is left unreversed, and the ancillary judgments following such adjudication be reversed upon the ground that the unreversed judgment was erroneously rendered. Untold confusion would result.

The litigable matters in the intervention proceedings are those relating to the particular demand and procedure thereon. Interveners, as interested parties, may concern themselves with matters in abatement to the original suit, but when these are adjudicated by judgment in that suit, they are concluded, unless such judgment is reversed.

We hold, therefore, that the rulings on pleas in abatement are not reviewable on this appeal. Union Indemnity Co. v. Ricks, 224 Ala. 514, 140 So. 597; United States Fidelity & Guaranty Co. v. Yielding Bros. Co. Department Stores, ante, p. 307, 143 So. 176.

Appellee strongly argues that a surety company, who has for a consideration executed a bond pursuant to the statute, cannot question the constitutionality of the venue provision of such statute.

Reliance is had upon a long line of decisions to the effect that constitutional safeguards for the benefit of a party may be waived by him; and where he has acted under a statute and received its benefits he is estopped to deny the liability thereby imposed.

The views heretofore expressed render unnecessary a decision as to the application of this doctrine to the case in hand. We cite, however, the following cases for ready reference when the question does arise: Woodward Iron Co. v. Bradford (1921) 206 Ala. 447, 90 So. 803; Shepard v. Barron (1904) 194 U. S. 553, 24 S. Ct. 737, 48 L. Ed. 1115; Booth Fisheries Company v. Industrial Comm. (1926) 271 U. S. 208, 46 S. Ct. 491, 70 L. Ed. 908; Daniels v. Tearney (1880) 102 U. S. 415, 26 L. Ed. 187; Greene County v. Lydy (1914) 263 Mo. 77, 172 S. W. 376, Ann. Cas. 1917C, 274; Patti v. United Surety Company (1908) 61 Misc. 445, 115 N. Y. S. 844; Moses v. Royal Indemnity Company (1916) 276 Ill. 177, 114 N. E. 554; Musco v. United Surety Company (1909) 196 N. Y. 459, 90 N. E. 171, 134 Am. St. Rep. 851; White v. Manning (1907) 46 Tex. Civ. App. 298, 102 S. W. 1160, 1161; 12 Corpus Juris, page 760, § 190; Ib. page 774, § 200.

█ Defendant moved for a continuance of the cause upon the ground that no service of the intervention suit of P. J. Kroell had ever been had as required by law.

A like motion was made for continuance of the cause because the intervention of Birmingham Slag Company was filed on the day the trial began; and no thirty days had elapsed within which to appear and defend.

In our recent case of United States Fidelity & Guaranty Co. v. Yielding Bros. Co. Department Stores (Ala. Sup.) 143 So. 176,[1] we have decided that interventions in this class of actions are governed by Code, § 9485, requiring the intervention complaint to be served on a party thereto who has not appeared in the cause, and upon the attorneys of a party who has appeared, who may answer or demur to same as if an original complaint, and that section 9486, giving thirty days after notice for pleading to the intervention, applies.

In the same case the matter of demand for jury trials is treated. Where some interventions are for jury trial and others for nonjury trial, of necessity separate trials may be had.

We further declared, in line with cases cited from the United States Supreme Court, that separate trials by the different interveners is not a matter of right, but for special reasons the distinct claims may be made the subject of separate trials. To conduct one cause with so many different claimants, involving issues wholly distinct from each other, justifies the use of such time-saving devices as will comport with justice to all.

In keeping with the principles thus announced, we hold the court was not bound to continue the cause as a whole, but, on proper motion, would have been required either to continue the cause as a whole, or as to those interveners, of whose claims no thirty-day service had been had, and which were not at issue. The motions here were for a continuance of the cause, the entire proceeding, in order to have the required service on belated interveners. The motions were overruled without error, in view of the offer of the court to keep open the case for any evidence the defendant might desire to present under pleas in short by consent.

█ The condition of the bond was not literally in statutory form. The obligation to pay for labor and materials was in terms written in as an obligation to the municipality. As an indemnity to the municipality against claims of laborers and materialmen of the contractor, the stipulation was meaningless. No such liability existed. The bond

---

[1] Ante, p. 307.

being given for the purposes named in the statute and accepted and acted upon as such, the statute giving a right of action to materialmen and laborers will be read into the bond. American Book Company v. State, 216 Ala. 367, 113 So. 592; 9 C. J. page 34, § 56.

■ The main issue of fact is directed to the amount due Mr. Kroell for material and supplies sold the contractor and consumed in this project No. 5, for which appellant was surety. The major portion of the demand was for cement.

The contract for No. 5 was executed May 31, 1929. The aggregate price for cement consumed in this project, as given by supervising engineers, was $7,984.90.

Theretofore, on October 23, 1928, the same contractor, Bryson, had entered into another construction contract with the town of Montevallo under ordinance No. 3, and known in the record as job No. 3. Hartford Accident & Indemnity Company was surety on the bond. The cement consumed in this project, as given by supervising engineers, aggregated $10,663.05.

On same date, October 23, 1928, the same contractor entered into a contract with the state highway department for certain road paving near Montevallo. This project is known in the record as state job [S–413]. Southern Surety Company was surety on this bond. The price of cement consumed therein was $5,822.15.

In July, 1929, a small additional paving job, known as No. 10, was let and executed by Bryson without bond. The cement thus consumed is placed at $603.75. A small amount of cement to the value of $187.25 was also used by the contractor in construction of sidewalks for citizens.

Cement was sold by Mr. Kroell to the contractor as needed on these several projects.

All deliveries were charged on general running account. No separate accounts were kept against the several projects. The same general account included miscellaneous supplies in addition to cement.

The total price of cement consumed on all these projects, as estimated by the engineer in charge, aggregated $25,061.10. The contractor, Bryson, places the amount at $25,155.93. Kroell, intervener, as we compute from his book accounts, places same at $25,080.66.

The evidence supports the following payments:

| | |
|---|---|
| Cash payments aggregating | $7,776.86 |
| Cash with orders [last 3 cars] | 1,140.08 |
| Cement sacks returned | 5,039.55 |
| | $13,956.49 |

| | |
|---|---|
| Payment by Southern Surety Co. on State Job | $3,500.00 |
| Payment by Hartford Acc'd't & Ind. Co. on No. 3 | 3,619.70 |
| Total payments | $21,076.19 |
| Aggregate price of cement | $25,080.66 |
| Less aggregate payments | 21,076.19 |
| Leaves balance on cement account | $ 4,004.47 |
| Intervener gives balance due on general supply account | $ 285.90 |
| Total balance due | $4,290.37 |

—to which proper interest items should be added.

The amount of judgment rendered was $5,782.84.

So far as the evidence discloses, this was excessive. We are not inclined, however, to render a decree here. The total cement above found includes many items running in the general account for supplies.

Pursuing the methods of counsel, we have segregated the items of cement, putting all cement in one account, and one or more items of credit are also transferred to cement account. As thus recast, we cannot say the balance of $285.90 on general supplies, arrived at by Mr. Kroell by his method of figuring, is correct.

One question stressed by appellant is the application of payments. They were entered on general account, and appellee proceeds on the idea that they should be applied to the oldest items. His evidence, not without conflict, tends to show that project No. 5, here involved, consumed the latest sales of cement, save those carloads last bought and paid for in cash, which were more than sufficient to cover the work outside the three bonded jobs.

Appellant insists, and the evidence goes to show, that the contractor directed that no credits be applied on the state job. This upon his contention at the time that the state was to pay the cement bill on that project. But it appears this contention was abandoned by the contractor, and he later claimed and obtained on compromise a payment by Southern Surety Company, the surety on the state project, in the sum of $3,500 on the account of Mr. Kroell.

■ This settlement, participated in by both Kroell and Bryson, discloses an abandonment of the contention that no prior payments should go on the state job, and impliedly made a reapplication by mutual consent so that former payments should cover the amount due Mr. Kroell on the state job, less what was paid by the surety company on that project.

595

The same applies to the settlement with Hartford Accident & Insurance Company as to the balance paid by that surety on job No. 3.

. Counsel, or appellee, Mr. Kroell, insists that the liability of Royal Indemnity Company was in no way involved in the settlements on the other projects.

The payments made by the other sureties were on account of the liability of Bryson, the common principal, and reduced such aggregate liability to that extent. Kroell can recover no greater balance from the third surety than he can from the principal in the bond.

Our conclusion is the payments heretofore made by the principal and his sureties should be applied first to the payment in full of Mr. Kroell's claims on No. 3 and the state job; and the payment of $1,140 for last shipment should cover amount of job No. 10 and sidewalks.

The residue of such aggregate payments should be applied, first, to balance due on general supply account, then on bill for cement consumed on No. 5, and judgment be rendered against the obligors on that bond for the balance.

That this decision be not misunderstood, we note that no question is here raised as to the source of the fund constituting the several payments, except payments made by other surety companies. It should not be raised at this stage. The cause will be reversed and remanded for decree in keeping with rules above announced.

The judgment in favor of P. J. Kroell is reversed and remanded; the judgment in favor of Birmingham Slag Company is affirmed. One-half of the costs of appeal will be taxed against appellant, and one-half against P. J. Kroell, appellee.

Affirmed in part, and in part reversed and remanded.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.

On Rehearing.

BOULDIN, J.

As appears in the original opinion, the decree in favor of Mr. Kroell was reversed and remanded because of uncertainty as to the correctness of an item of $25, claimed to be balance due on general supply account.

. Said appellee, in application for rehearing, consents to waive that item and asks that a decree be here rendered modifying and affirming the decree of the court below.

This application is granted and a decree here rendered in his favor for the sum of $4,004.47, with interest thereon from July 24, 1929, to this date, making a total of $5,060.05. The taxation of costs will remain unchanged.

Application of appellee is granted, judgment of reversal set aside, and the decree of the lower court is modified and affirmed.

.Application of appellant overruled.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.