152 So. 42

**MAGIC CITY PAINT & VARNISH CO. v. AMERICAN SURETY CO. OF NEW YORK.**

5 Div. 151.

Supreme Court of Alabama.

Jan. 11, 1934.

Dickinson & Dickinson and Jacob A. Walker, all of Opelika, for appellant.

Denson & Denson, of Opelika, and Steiner, Crum & Weil and Sam Rice Baker, all of Montgomery, for appellee.

GARDNER, Justice.

The former appeal bore no relation to the merits of the cause, and is without importance here. Benson Paint & Varnish Co. v. American Surety Co., 225 Ala. 353, 142 So. 767. It may be noted, however, merely for the sake of regularity, that plaintiff's corporate name has been changed pending the litigation to that of Magic City Paint & Varnish Company.

The suit is against the defendant as surety on the bond of the M. D. Morgan Company, contractor for the construction of a highway bridge near Demopolis.

The M. D. Morgan Company contracted for the construction of a highway bridge near Demopolis, and defendant became the surety on the bond required by the statute (Gen. Acts 1927, p. 356), and which was executed in substantial compliance therewith, and defendant's liability is governed thereby. United States F. & G. Co. v. Benson Hardware Co., 222 Ala. 429, 132 So. 622; United States F. & G. Co. v. Yeilding Bros., 225 Ala. 307, 143 So. 176; Limestone County v. Montgomery, 226 Ala. 266, 146 So. 607; American Book Co. v. State, 216 Ala. 367, 113 So. 592; Royal Indemnity Co. v. Young & Vann Supply Co., 225 Ala. 591, 144 So. 532.

Plaintiff shipped to the Morgan Company 1,200 gallons of paint for use in the construction of this bridge, and instituted this suit to recover of defendant $2,988.40, the full purchase price. The cause was tried before the court without a jury, resulting in a judgment for plaintiff in the sum of $1,244.86, and, from the order of the court denying its motion for a new trial on the ground of the inadequacy

of the sum recovered, plaintiff prosecutes this appeal. The recovery allowed includes the purchase price for 405 gallons of the paint and the brushes, which formed a part of the order, and it is insisted plaintiff was also entitled to the purchase price of the remaining 795 gallons.

The bridge was of two principal parts, the approaches and the two spans. The two spans were constructed by the Virginia Bridge & Iron Company under contract with the Morgan Company.

Defendant's proof tended to show (and, there was none to the contrary) that the Virginia Company (to so designate it) considered the painting of these spans a part of its contract, and that they were in fact so painted by said company.

Plaintiff's evidence tended to show that the Morgan Company, when ordering the paint, had in mind paint sufficient for both the approaches and the spans, and ordered accordingly. The Morgan Company defaulted on its contract, and defendant undertook the completion of the job, and contracted with the Kershaw Contracting Company to that end, and the Kershaw Company assumed the contract that had previously been made for the construction of the two spans by the Virginia Company.

Defendant found on hand the 1,200 gallons of paint, and insisted the order was entirely too large. After much conversation and correspondence, defendant agreed to, and did, use 405 gallons, and it is without dispute that is all of plaintiff's paint that went into the construction of the bridge. As to the remainder, defendant notified plaintiff it was stored nearby, and held at its own risk, but the invariable response was that the title to the paint was in the Morgan Company, and payment for the full amount demanded. Neither plaintiff nor defendant ever used the remainder of the paint, and its final disposition is a matter of conjecture.

The evidence offered by plaintiff as to the estimates of the amount of paint required for the entire bridge showed much variance, and dependent upon several conditions. The minimum for that entire structure, including the two spans, appears to have been placed at about 736 gallons, and the maximum 1,309 gallons.

Plaintiff has assumed the position throughout that the sale of the 1,200 gallons of paint to the Morgan Company was absolute and without qualifications, and insists that, as some of the paint was used and the remainder was shipped for this bridge, and consumable in its erection, the liability of the bond is fixed (Union Indemnity Co. v. Ricks, 224 Ala. 514, 140 So. 597; United States F. & G. Co. v. Benson Hardware Co., supra), and that defendant, having assumed the contract, stood in the position of the original contractor (Unit-ed States F. & G. Co. v. Yeilding Bros., 225 Ala. 307, 143 So. 176), and is liable for the full amount whether or not actually used on the project.

Defendant, on the other hand, insists that, the paint not having been actually used on the project, there is no liability on the bond under United States F. & G. Co. v. Benson Hardware Co., supra, and State v. So. Surety Co., 221 Ala. 113, 127 So. 805, 70 A. L. R. 296.

But our study of the record persuades us there is no liability shown as between the original contracting parties, and of consequence none, of course, against the surety. This conclusion being decisive of the cause, consideration of the above-mentioned question is pretermitted as unnecessary for determination.

■ The order accepted by plaintiff was not an absolute and unconditional one, and the Morgan Company seemed careful to have the order on its face show that it was tentative. The language of the order in this respect was interpreted by plaintiff's salesman, who made this particular sale, as follows: "And by that was intended that if they needed more paint than that, they would get it at that price, and if they did not take the full amount, it could be returned and get full credit for it." If, under such a tentative order, the Morgan Company should discover that in fact under the contract with the Virginia Company the two spans would be painted by said company, therefore, then under the salesman's interpretation of the tentative order the Morgan Company could exercise the right to return the remainder of the paint and "get full credit." This character of order constituted what is termed "a sale or return" agreement, with the right to return the amount unused. Ferry & Co. v. Hall, 188 Ala. 178, 66 So. 104, L. R. A. 1917B, 620; Robinson v. Fairbanks, 81 Ala. 132, 1 So. 552; Foley v. Felrath, 98 Ala. 176, 13 So. 485, 39 Am. St. Rep. 39; 55 C. J. § 470.

True, there was no formal tender of return, but the proof clearly shows it would have been a useless formality, as plaintiff's conduct throughout indicated that it wholly ignored any right of return, and persistently insisted it had nothing to do with the paint, as the absolute title passed to the purchaser. Under such circumstances, a formal tender or offer to return is excused. 55 C. J. p. 484.

Plaintiff, in making the sale, accepted a tentative order only, and has no right to ignore its meaning and effect. The contract of the Virginia Company for the two spans is reasonably to be interpreted as providing for the painting of the two spans, a completed job on its part, and in fact none of plaintiff's paint was used for these spans.

■ The argument is that the Morgan Company should have required the Virginia Company to make use of this particular paint, but we see no authority for such require-

ment. And the proof tends to show, as previously noted, that the tentative order meant the right of the Morgan Company to return so much of the paint as was not needed. If, upon further investigation, it was discovered the painting of the spans was provided for under the Virginia Company contract, then so much of the paint for that purpose was not needed, and was subject to be returned. Plaintiff's position ignores any right of return, and overlooks entirely the tentative character of the sale agreement. So, assuming that defendant in this regard does stand in the position of the Morgan Company, yet the trial court was nevertheless justified in limiting the recovery to the amount actually used.

All other questions may therefore be laid aside, as of course, if liability be not shown against the contractor, clearly none can be established against the surety.

We are in agreement with the finding of the court below, and the judgment rendered will accordingly be here affirmed.

Affirmed.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.