We granted certiorari review in this case primarily to review the holding of the Court of Civil Appeals, with one Judge dissenting, that the surety for a conservator was absolutely liable for conservatorship losses, even though some of those losses could have been attributable to the actions of a successor conservator. As explained below, we reverse the holding of the Court of Civil Appeals on this issue, but we affirm its decision regarding the award of attorney fees and the taxation of costs.
The facts are adequately set out in the opinion of the Court of Civil Appeals, [1] and we state only those necessary to address the legal issue presented: Whether a conservator is absolutely liable for losses suffered by the beneficiaries of an estate, even though some of those losses could have been caused by the actions of a successor conservator.
In February 1989, Floyd Stanton was appointed conservator of the estates of his two minor grandchildren, Christopher Stanton and Ashley Stanton, and he filed bonds in both cases, naming himself as principal and Lawyers Surety Corporation as surety. Both of the bonds stated that Stanton and Lawyers Surety were "held and firmly bound unto the Judge of [Probate] . . . conditioned that the above bounden Principal [Floyd Stanton] who has been appointed conservator [of the estate of Christopher Stanton and Ashley Stanton] shall well and truly, faithfully perform all the duties required of him under said appointment."
This case relates to Stanton's purchase of two parcels of land in September 1992, to which he took title in his own name rather than in the name of the conservatorship estate. The properties were located in Robertsdale, Alabama, one on Wilters Street and the other property in the Cardinal Hills subdivision. It is undisputed that Stanton used estate funds in purchasing these properties but took title to the properties in his own name and in his individual capacity.
During the conservatorship, Stanton resigned as conservator and the probate court appointed Thomas Bryant, the general guardian and conservator of Mobile County, as successor conservator. Shortly thereafter, Steve and Debra Whitehead, the adoptive father and natural mother of Christopher and Ashley Stanton, filed petitions seeking an accounting from Stanton and seeking appointment as successor conservators over the two estates.
The probate court did not immediately act on the Whiteheads' petitions, but set them *Page 835 
for a hearing. Before the hearing, Thomas Bryant requested authority to sell Christopher and Ashley's interests in the Robertsdale properties. With his request, Bryant included exhibits indicating that he could sell the Wilters Street property for $61,000 (which equaled the appraisal value of the property) and the Cardinal Hills property for $36,900 ($900 above the appraisal value of the property). On January 18, 1994, the probate court authorized Bryant to sell the properties.
In July 1994, the Whiteheads requested that the probate court enter a conditional judgment against Lawyers Surety and Stanton based on Stanton's conduct as conservator. The Court entered such a judgment; ultimately, this conditional judgment was made final.
Although agreeing that it was responsible for some of the losses suffered as a result of the malfeasance of its principal, Lawyers Surety appealed to the Court of Civil Appeals, arguing that it was not responsible for losses that could be attributable to the malfeasance or misfeasance of the successor conservator, Thomas Bryant. Lawyers Surety also asked the Court of Civil Appeals to reverse the judgment of the Mobile Probate Court awarding attorney fees and the fees of the guardians ad litem, arguing that under Alabama law it, as surety, was not required to pay such an award in this case.
There is no dispute that Stanton breached his fiduciary duty to the estates of his grandchildren by taking title to the Robertsdale properties in his own name. See Restatement(Second) of Trusts, § 179 (1959) (stating that a trustee "is under a duty to the beneficiary to keep the trust property separate from his individual property" and to ensure "that the property is designated as property of the trust"). Consequently, Lawyers Surety faces at least some measure of liability in this case; the critical question is whether Lawyers Surety is absolutely liable for all the losses suffered by the estates.
This Court has held that, as a general rule, suretyship is a contractual relationship. See City of Birmingham v.Trammell, 267 Ala. 245, 101 So.2d 259 (1958); see also, 74 Am. Jur.2d Suretyship § 3 (1974). Consequently, we begin our inquiry into the liability of Lawyers Surety by reviewing the terms of the surety contract itself. The surety contract states that Lawyers Surety agreed to bind itself to the judge of probate of Mobile County on behalf of Stanton, as conservator of the estates of Christopher and Ashley Stanton. Although the contract indicates that Lawyers Surety agreed to be held liable for the acts of Stanton, it does not specify how this liability is to be affected by Stanton's resignation and the appointment of a successor conservator. In the absence of any direct guidance from the contract itself regarding the ultimate liability of the surety, we must turn to principles of law relating to the liability of a trustee for losses that flow from the trustee's breach of fiduciary duty.
We first look at the Restatement (Second) of Trusts.
Section 205 provides, in part: "If the trustee commits a breach of trust, he is chargeable with (a) any loss or depreciation in value of the trust estate resulting from the breach of trust. . . ." Comment f to this section explains:
 "f. Loss not resulting from breach of trust.
As is stated in Clause (a), a trustee is liable for a loss resulting from a breach of trust. A question may arise, therefore, as to the causal connection between the breach of trust and the loss. If the trustee commits a breach of trust and if a loss is incurred, the trustee may not be chargeable with the amount of the loss if it would have occurred in the absence of a breach of trust.
 "Where a trustee has committed a breach of trust in failing to earmark a trust investment, he is not necessarily liable for a loss resulting from the making of the investment. See § 179, Comment d. He is not liable where the loss did not result from the failure to earmark, except in a situation where as a matter of policy an absolute liability is imposed upon the trustee in order to deter him from committing such a breach of trust. The trustee is liable for the loss where he has taken securities in his own name in order that he may subsequently be in a position where he may claim the securities as his own if they go up in value and claim that they are *Page 836 
held by him as trustee if they go down in value. He is liable for the loss even though he had no such purpose in mind, as long as his failure to earmark puts him in a position where it would be easy for him to make similar claims. On the other hand, if there is no danger that such claims could successfully be made, the breach of trust involved in the merely technical failure to earmark the investment does not render the trustee liable for a loss resulting from the investment."
(Emphasis added.)
Comment f appears to recognize that a trustee should not be held chargeable with a loss to the trust estate in the absence of a causal connection between the trustee's conduct and the loss, unless, as a matter of policy, the trustee's behavior subjects it to absolute liability.
The Court of Civil Appeals, with one Judge dissenting, held that, based on this Court's decisions in Chancellor v.Chancellor, 177 Ala. 44, 58 So. 423 (1912), and Barnesv. Clark, 227 Ala. 651, 151 So. 586 (1933), Stanton's surety, Lawyers Surety Corporation, was absolutely liable even though a portion of the losses could have been attributable to actions of a successor conservator. Specifically, the Court of Civil Appeals stated:
 "Alabama has imposed absolute liability upon conservators for losses incurred by an investment when title is taken in the conservator's personal capacity and not as trustee. Thus, in deciding this appeal, we need not address Lawyers Surety's contention that Bryant breached his duties of trust in the process of selling the estates' respective one-half interests in the Cardinal Hills property and the Wilters Street property, for [Floyd Stanton's] (and therefore Lawyers Surety's derivative) liability for losses from two properties is absolute under the circumstances of this case."
719 So.2d at 830.
In Chancellor v. Chancellor, this Court stated that "the authorities agree that a trustee who either invests or deposits trust money in his own name, without in some way designating it as trust property, will be responsible for any loss that may occur to the fund while so invested or deposited."Chancellor, 177 Ala. at 49, 58 So. at 424. Similarly, in Barnes v. Clark, this Court stated that, although a guardian may make temporary deposits of trust funds in a responsible bank without facing liability if the bank fails,
 "to come within the protection of [that] rule, the guardian must not deposit the funds in his own name, nor commingle the account with his own in the bank, for, if he does, his liability will become absolute, and he cannot escape liability by reason of good faith, prudence, or judgment, nor upon the fact that he may have disposed of his own funds in the same way."
227 Ala. at 652, 151 So. at 587.
Although Chancellor and Barnes, at first blush, appear to support the holding of the Court of Civil Appeals — that Lawyers Surety is absolutely liable because its principal took title to the trust property in his own name — we conclude that the Court of Civil Appeals interpreted these two cases too broadly. The circumstances of this case are sufficiently different from those of Chancellor andBarnes that we reach a different result in this case.
Both Chancellor and Barnes involved trustees who had placed trust funds in a bank in the trustee's individual capacity, and the respective banks failed, through no fault of the trustee. The issue in both of those cases was whether the trustee should be held liable for the losses to the trust despite the fact that the trustee had not actually "caused" the loss. In short, the question was whether the failure of the bank was an intervening event sufficient to break the chain of causation. In those two cases, this Court, appropriately, held that the chain of causation had not been broken and that the trustee was obligated to bear the losses.
It appears to us that the circumstances of this present case are different in one critical respect. As Judge Crawley noted in his dissent, neither Chancellor nor Barnes
involved losses alleged to have been caused by a successorconservator, in this case, Bryant, the successor conservator, owed the same fiduciary duty to the estates as did the predecessor conservator, Stanton. In short, the critical question in Chancellor and Barnes was whether a trustee should be held liable for losses resulting from the commingling of *Page 837 
trust funds with the trustee's own in a bank that failed, without regard to the trustee's good faith and sound judgment. Here, the question is whether an initial trustee is absolutely liable, even if a portion of the loss was caused by the malfeasance or misfeasance of a successor conservator. The Whiteheads argue that "[Lawyer's Surety], instead of passive participation while Bryant conducted the sale of the properties, could have taken a more active and critical role," and that "[i]t also could have satisfied the liability and pursued its right to be subrogated (§ 8-3-2 et seq., Ala. Code 1975, as amended) to the Estates' rights in the real property, and then sold the properties for itself, in a manner to minimize its losses." However, we conclude, as a matter of policy, that Alabama law does not impose absolute liability on an initial conservator where there are two or more fiduciaries and, as is arguably the case here, the losses suffered were attributable, at least in part, to breaches by more than one of the fiduciaries. It seems inequitable to assign all of the liability for the losses to the first fiduciary and his surety, when the causal connection between the losses and the conduct of each fiduciary can be apportioned.
Based on the foregoing, we affirm the judgment of the Court of Civil Appeals insofar as it relates to the award of attorney fees and guardian ad litem fees, but we reverse that judgment insofar as it imposes absolute liability on Lawyers Surety. We remand the cause for the Court of Civil Appeals to remand for further proceedings consistent with this opinion. We authorize the probate court, on remand, to apportion the attorney fees and the guardian ad litem fees between Lawyers Surety and Thomas Bryant, if Bryant is found to have partly caused the estates to incur these expenses and if the court determines that such apportionment is appropriate.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HOOPER, C.J., and HOUSTON, KENNEDY, COOK, BUTTS, and SEE, JJ., concur.
[1] See Lawyers Surety Corp. v. Whitehead,719 So.2d 824, 826 (Ala.Civ.App. 1997).