MOORE, Chief Justice
(dissenting).
Because Batson-Cook Company (“Bat-son-Cook”) must be liable to Johnson Controls, Inc. (“JCI”), before Liberty Mutual *264 Insurance Company (“Liberty Mutual”) can be liable to JCI, I respectfully dissent.

I. The Terms of the Payment Bond Control

The majority opinion fails to address the operative terms of the payment bond between Batson-Cook and Liberty Mutual (“the bond”). “[Suretyship is a contractual relationship. Consequently, we begin our inquiry into the liability of [the surety] by reviewing the terms of the surety contract itself.” Ex parte Lawyers Sur. Corp., 719 So.2d 833, 835 (Ala.1998). In a suretyship contract, “one person engages to be answerable for the debt, default, or miscarriage of another. It is an obligation accessorial to that of the principal debtor: the debt is due from the principal, and the surety is merely a guarantor for its payment.” Evans v. Keeland, 9 Ala. 42, 46 (1846). The “general principles of contract interpretation apply with equal force to surety contracts.” Fidelity & Deposit Co. of Maryland v. Jefferson Cnty. Comm’n, 756 F.Supp.2d 1329, 1335 (N.D.Ala.2010) (applying Alabama law).
The bond states that Batson-Cook, as principal, and Liberty Mutual, as surety, bind themselves for the payment of $1,059,000 to Roanoke Healthcare Authority (“Roanoke Healthcare”) and all “persons, firms, and corporations” who furnished labor and materials under the Batson-Cook/Roanoke Healthcare contract. Liberty Mutual agreed to be liable for Batson-Cook’s unpaid debts if Batson-Cook did not “properly make payment to all persons, firms, and corporations furnishing materials for or performing labor in the prosecution of the WORK provided for in such con-tract_” (Capitalization in original.) Batson-Cook’s obligation to Roanoke Healthcare controls Liberty Mutual’s liability. Liberty Mutual is answerable for Batson-Cook’s default, not Roanoke Healthcare’s default. We must “enforce an unambiguous, lawful contract, as it is written.... A court may not make a new contract for the parties or rewrite their contract under the guise of construing it.” Ex parte Dan Tucker Auto Sales, Inc., 718 So.2d 33, 35-36 (Ala.1998). The majority ignores the plain language of § 39-1-1, Ala.Code 1975, and rewrites the surety contract to make Liberty Mutual answerable for Roanoke Healthcare’s debts, in addition to those of the principal, Batson-Cook.

II. The Proper Claimant Under the Bond

The majority states that the fact that JCI sold equipment and materials directly to Roanoke Healthcare “is immaterial to a determination whether JCI is a proper claimant under the payment bond.” 160 So.3d at 260. I disagree. This fact is not only material but also dispositive of the question whether JCI is a proper claimant under the bond. “[I]t is of the essence of such a [suretyship] contract, that there be a valid obligation of the principal debtor.” Evans v. Keeland, 9 Ala. at 46. “There can be no surety unless there is a principal primarily liable.” City of Birmingham v. Trammell, 267 Ala. 245, 248, 101 So.2d 259, 262 (1958). “ ‘The threshold issue on this bond claim is whether the contractor ... is liable to the subcontractor ... for labor, materials, or supplies.’” AG. Gaston Constr. Co. v. Hicks, 674 So.2d 545, 547 (Ala.Civ.App.1995) (quoting the trial court’s order).[5]
Although the majority relies on the four elements for recovery on a § 39-1-1 payment bond stated in Federal Insurance Co. v. I. Kruger, Inc., 829 So.2d 732 (Ala. *265 2002), it overlooks Kruger's statement of the threshold element of suretyship law— the liability of the surety to the principal:
“It is true that if Kruger has no right of recovery against the principal ... Kruger may not recover against the surety ... on the payment bond.... [I]n order to determine whether Kruger is entitled to recover under the terms of the payment bond, we must first determine whether Kruger is entitled to recover under the Harbert-Kruger subcontract.”
Kruger, 829 So.2d at 736-37 (emphasis added). Likewise, Batson-Cook must be liable to JCI before Liberty Mutual can be liable to JCI. Because Batson-Cook is not liable to JCI, neither is Liberty Mutual. “All other questions may therefore be laid aside, as of course, if liability be not shown against the contractor, clearly none can be established against the surety.” Magic City Paint & Varnish Co. v. American Sur. Co. of New York, 228 Ala. 40, 43, 152 So. 42, 44 (1934). Until today’s decision, an Alabama surety was “never answerable upon an undertaking unless his principal is bound thereby.” McKissack v. McClendon, 133 Ala. 558, 562, 32 So. 486, 487 (1902) (Tyson, J., dissenting).

III. Reading the Statute into the Bond

The majority states that “[t]he terms of the payment bond here limit claimants to those having a direct contract with either the contractor or a subcontractor.” 160 So.3d at 260. The bond provides “that beneficiaries or claimants hereunder shall be limited to the SUBCONTRACTORS, and persons, firms, and corporations having a direct contract with the PRINCIPAL or it’s [sic] SUBCONTRACTOR.” (Capitalization in original.) The majority continues: “[W]hen a payment bond is issued to satisfy the provisions of § 39-1-1, as it was in the present case, the requirements of the statute will be read into the bond.” 160 So.3d at 260, On its face, Liberty Mutual’s bond does not exclude JCI, which had a direct contract with Hardy, Batson-Cook’s subcontractor. Because the bond facially complies with § 39-1-1, we have no need to read additional provisions into the bond. The majority opinion reads an extra-statutory obligation into the bond, namely, the obligation of Roanoke Healthcare, as the owner, to make payments. We may not insert into a bond additional obligations not stated in § 39-1-1.

IV. The Batson-Cook/Hardy Subcontract

The majority also neglects the terms of the Batson-Cook/Hardy subcontract, which provides that “the Subcontractor agrees not to perform any work directly for the Owner ... or deal directly with the Owner’s representatives in connection with the project, unless otherwise directed in writing by the Contractor.” (Emphasis added.) Batson-Cook directed Hardy to deal directly with Roanoke Healthcare because
“all purchases of tangible personal property to be incorporated into the realty by Batson-Cook ... -will be paid directly by [Roanoke Healthcare], but addressed to Batson-Cook .... who will forward them on to [Roanoke Healthcare] for payment. [Roanoke Healthcare] payments will be issued directly to the material supplier.”
The Batson-Cook/Hardy subcontract incorporated the Batson-Cook/Roanoke Healthcare contract, which states that Roanoke Healthcare would directly purchase all or a portion of the materials and equipment. Batson-Cook agreed to serve as a purchasing agent to bind Roanoke Healthcare contractually for the purchase of equipment and materials necessary to carry out Batson-Cook’s contractual obligations. The purchasing-agent agreement *266 provides that “the net amount paid for tangible personal property purchased under this agreement shall be deducted from the total amount that would otherwise be due from [Roanoke Healthcare] to [Bat-son-Cook] under the project agreement.”
After reviewing these contracts, the trial court found that
“the equipment and materials at issue were purchased directly from [JCI] by [Roanoke Healthcare] and thus were outside of the scope of the contract between [Roanoke Healthcare] and [Bat-son-Cook], the general contractor, who was also acting as the purchasing agent of [Roanoke Healthcare] for equipment and materials. [JCI’s] invoices also reflect the purchaser being [Roanoke Healthcare]. Since the equipment and materials at issue were outside the scope of the contract between [Batson-Cook] and [Roanoke Healthcare], they are not covered by the payment bond.”
The majority does not give proper deference to the trial court’s order, which was in accord with the “principle of the common law, that whatever operates as a partial, or total exoneration of the principal, will necessarily have the same effect in favor of the surety.” State v. Parker, 72 Ala. 181, 184 (1882). “A surety ... may be discharged from its obligation ... by a discharge of the principal.” 17 Am.Jur.2d Contractors’ Bonds § 15 (2004). The purchasing-agent agreement partially discharged Batson-Cook from its obligation to make payments to materialmen and “operated to discharge, not only [Batson-Cook], but also [Liberty Mutual].... The liability of the principal being adjudged not to exist, the liability of the sureties falls with its extinguishment.” Parker, 72 Ala. at 184.
JCI “must take notice of the terms and character of the contract between the owner and the original contractor.” Selma Sash, Door & Blind Factory v. Stoddard, 116 Ala. 251, 254, 22 So. 555, 556 (1897). Once JCI had notice of the contract between Batson-Cook and Roanoke Healthcare, that contract could not be changed “to the prejudice of any one having a legal interest in it, owner, original contractor, subcontractor, or materialman.” Cranford Mercantile Co. v. Wells, 195 Ala. 251, 255, 70 So. 666, 668 (1916). Justice Joseph Story stated that “the liability of a surety is not to be extended, by implication, beyond the terms of his contract.” Miller v. Stewart, 22 U.S. (9 Wheat.) 680, 703, 6 L.Ed. 189 (1824). Accordingly, JCI is bound by the contract and subcontract. Under these documents, JCI agreed to seek payment from Roanoke Healthcare, not from Batson-Cook.
Because JCI agreed that Batson-Cook was not liable to JCI, JCI has no right to recover from Batson-Cook. Where “there is no liability shown as between the original contracting parties, [there can be] of consequence none, of course, against the surety.” Magic City Paint, 228 Ala. at 42, 152 So. at 43. JCI “can recover no greater balance from [Liberty Mutual] than he can from the principal in the bond.” Royal Indem. Co. v. Young & Vann Supply Co., 225 Ala. 591, 595, 144 So. 532, 535 (1932). The majority overlooks the fact that “[Batson-Cook’s] liability ... is the limit of the liability of [Liberty Mutual] and a necessary element to [Liberty Mutual’s] liability.” American Cas. Co. of Reading, Pa. v. Devine, 275 Ala. 628, 641, 157 So.2d 661, 673 (1963).

V. Statutory Construction of § S9-1-1

The majority extends Liberty Mutual’s liability and does so purportedly to further the purposes of § 39-1-1. Although § 39-1-1 should be “liberally construed” to accomplish its purpose of protecting materi-almen, Headley v. Housing Authority of Prattville, 347 So.2d 532, 535 (Ala.Civ.App. *267 1977), the purpose of the statute is plainly found in the language of the statute. See Ex parte State Dep’t of Revenue, 683 So.2d 980, 983 (Ala.1996) (noting that, “where plain language is used, the court is bound to interpret that language to mean exactly what it says”). We must construe the statute, not create obligations it omits.
The majority never construes subsection (a) of § 39-1-1, which defines the bonding obligation that provides a cause of action under subsection (b). The Court’s duty is to give effect to both subsections of § 39-1-1 because “every part of a statute should, if possible, be upheld and given appropriate force.” State v. Western Union Tel. Co., 196 Ala. 570, 573, 72 So. 99, 100 (1916). “[Pjarts of the same statute are in pari materia and each part is entitled to equal weight.” Darks Dairy, Inc. v. Alabama Dairy Comm’n, 367 So.2d 1378, 1381 (Ala.1979).
A materialman may bring “a civil action upon the payment bond” under § 39-1-1(b). The bond at issue is “the obligation that the contractor ... shall promptly make payments to all persons supplying labor, materials, or supplies for or in the prosecution of the work provided in the contract.” § 39-l-l(a) (emphasis added). The majority ties JCI’s claim to its intent to provide materials for “a public work,” but the statute limits JCI’s claim to payment for materials and supplies to “the work provided in the contract.” The Court, however, has no “liberty to rewrite statutes,” Ex parte Carlton, 867 So.2d 332, 338 (Ala.2003), and “may not detract from or add to the statute.” Water Works & Sewer Bd. of Selma v. Randolph, 833 So.2d 604, 607 (Ala.2002). The majority has rewritten this statute and has effectively cut § 39-1-1 (b) loose from any moorings to § 39-1-1 (a), its companion subsection.

VI. ■The Purpose of § 39-1-1

The majority makes much of the purpose of § 39-1-1, which is “ ‘ “to provide security for those who furnish labor and material in performance of government contracts as a substitute for unavailable lien rights, and [it] is liberally construed to accomplish this purpose.” ’ ” 160 So.3d at 262 (quoting Safeco Ins. Co. of America v. Graybar Elec. Co., 59 So.3d 649, 656 (Ala.2010), quoting in turn Headley v. Housing Auth. of Prattville, 347 So.2d at 535). The remedial purpose of the statute, however, does not justify expanding the liability of sureties. “[A] court will not enlarge the scope of a statutory bond beyond the express terms of a statute....” 74 Am. Jur.2d Suretyship § 27 (2012). The purpose of § 39-1-1, like the parallel federal Miller Act, “does not justify ignoring plain words of limitation and imposing wholesale liability on payment bonds.” Clifford F. MacEvoy Co. v. United States, for Use & Benefit of Calvin Tomkins Co., 322 U.S. 102, 107, 64 S.Ct. 890, 88 L.Ed. 1163 .(1944). Likewise, “courts are not justified in writing liability into a Miller Act bond.” Graybar Elec. Co. v. John A. Volpe Constr. Co., 387 F.2d 55, 58 (5th Cir.1967).
The majority has expanded Liberty Mutual’s liability at the expense of its rights as a surety under Alabama law. See § 8-3-1 et. seq., Ala.Code 1975 (stating the rights of a surety who pays a principal’s debts). If the Court requires Liberty Mutual to pay Roanoke Healthcare’s debt to JCI, Liberty Mutual will not be entitled to reimbursement against Batson-Cook. “When a surety satisfies the principal’s obligation, it is entitled to reimbursement or restitution from the principal.” SouthTrust Bank of Alabama, N.A v. Webb-Stiles Co., 931 So.2d 706, 712 (Ala.2005). Liberty Mutual’s “right to indemnity does not arise ... until one acting as surety *268 satisfies his principal’⅛ obligation.” Alabama Kraft Co. v. Southeast Alabama Gas Dist., 569 So.2d 697, 700 (Ala.1990) (emphasis added). The majority opinion, when “followed to its logical conclusion, necessarily results in imposing a liability upon [Liberty Mutual] never contracted by [it], and leaving [Liberty Mutual] without a right of reimbursement from [Batson-Cook].” McKissack, 133 Ala. at 563, 32 So. at 487 (Tyson, J., dissenting). I agree that the Court should protect materialmen who provide equipment and material for public-works contracts. However, the majority opinion would remedy JCI’s legal injury by wrongly imposing on Liberty Mutual the liability for the injury.

VII. Conclusion

Because JCI is not entitled to recover from Batson-Cook, JCI is not entitled to payment from Liberty Mutual. Therefore, I would hold that the judgment of the trial court should be affirmed.

. "Inherent in the existence of any surety relationship is the requirement that the principal owe some obligation.” 72 C.J.S. Principal and Surety § 18 (2005).