UNION INDEMNITY CO. *v.* ACME BLOW PIPE & SHEET METAL WORKS *et al.*[*]

(Division A.   April 9, 1928.   Suggestion of Error Overruled June 11, 1928.)

[117 So. 251.   No. 26740.]

*Corpus Juris-Cyc. References: Schools and School Districts, 35Cyc, p. 957, n. 46; p. 960, n. 73, 75; p. 961, n. 76 New.

*Geo. Butler,* for appellant.

334

338

*Morse & Bryan,* for appellee, city of Jackson.

*Alexander & Alexander,* for appellee, Acme Blow Pipe & Sheet Metal Works.

*Wells, Stevens & Jones,* for appellees, S. P. Cagle and Stuart C. Irby Co.

*Wells, Stevens & Jones,* for cross-appellant, S. P. Cagle.

Argued orally by *Geo. Butler,* for appellant, and by *Julian Alexander* and *W. E. Morse,* for appellee.

McGowen, J.   This is an appeal from the chancery court of the First district of Hinds county, Miss., wherein the Union Indemnity Company, a surety company, is appellant, and the Acme Blow Pipe & Sheet Metal Works; the board of education of the city of Jackson, Miss., and others, are appellees.

The controversy arose out of a contract requiring a bond, to erect a public building, and bond given therefor in pursuance of the contract.   The suit was initiated in the circuit court on declaration filed by the Acme Blow Pipe & Sheet Metal Works against the surety company and its principal, the Union Electric Plumbing & Heating Company, upon contract and bond entered into January 25, 1925, for putting in a heating and ventilating system in certain high schools in the city of Jackson, Miss., for which said city was to pay the contractor twenty thousand dollars.   The contract provided for furnishing, by the principal, of all labor and materials necessary, and specifically provided that the contractor should provide payment for all materials and labor.   The suit filed in the circuit court was on the bond, and alleged that plaintiffs were materialmen and entitled to sue on the bond under chapter 217, Laws of 1918.

The surety company appeared and demurred to the declaration.   The bond was attached to the declaration, and was an indemnity bond, in form, and not a performance bond, and did not contain any provisions for payment for labor and material, as provided by chapter 217, *supra.*

After the demurrer was overruled in the circuit court, on application of the surety company, appellant here, the

case was removed to the chancery court, and there, in due course, the complainant filed his bill setting up all requisite facts and charging the surety company with liability on the bond and contract which were attached to the bill, as provided in chapter 217, Laws of 1918.

Thereupon, by order of the court, in turn, Cagle, Stewart C. Irby Co., and Whitlock Coil Pipe Co. *et al.*, were permitted to intervene and also set up their claims.

The board of education filed its answer to the original bill denying any liability. The Union Indemnity Co. filed separate answers to each of the intervener's bills, and also to the original bill. Likewise, there was a demurrer contained in the answer of the surety company and also specific pleas.

The surety company made its answer a cross-bill against the board of education of the city of Jackson, alleging that, under the contract, if it should be held liable to the materialmen, the board of education had agreed to retain fifteen per cent., and not having retained so much as was required by said contract, if it was required, by the court's decree, to pay the claims for which suit had been brought, that the surety company was entitled to be subrogated to the full extent of fifteen per cent. of the contract price.

As to the interveners, and the board of education of the city of Jackson, the surety company specifically pleads that said city had passed ordinances requiring all bonds to be performance bonds, in double the amount of the contract, and other details unnecessary to mention, and said that the bond executed was not for double the amount of the contract, and that, therefore, they were not liable.

Upon final hearing of the cause, the court entered a decree adjudging to the Acme Blow Pipe & Sheet Metal Works, S. P. Cagle, Stewart C. Irby Co., the Whitlock Coil Pipe Co., and Southern Foundry & Machine Co., the sums severally found to be due to them, and direct-

ing that the sum of one thousand one hundred ninety-nine dollars and forty cents, the amount the city owed on the contract, less the clerk's commissions, be paid ratably to the parties above mentioned. The court denied the plea that the bond was in contravention of the ordinance of the city of Jackson. No ordinances were proven by the pleader, he distinctly declining to offer proof. The court sustained the city of Jackson's demurrer to the cross-bill, and denied the surety company any relief as to the retainage. The court denied to Cagle, Whitlock Coil Pipe Co., and Stewart C. Irby Co., any relief as against the board of education of the city of Jackson, and denied any claims of priority set up by any of the interveners, and certain interveners appealed here by way of cross-appeal.

Such other facts as are necessary will be detailed with the several points presented here for decision.

On direct appeal, of the surety company, so far as the main appeal is concerned, two grounds are assigned for reversal:

1. That the court should not have proceeded with the hearing and entry of final decree, because the notice published was insufficient and all parties interested had not been made defendants and summoned as provided by section 3064 of the Code of 1906.

Upon this proposition, this action is based on chapter 217, Laws of 1918, requiring that a person entering into a formal contract with a state, or any county or any municipality therein, or any political subdivision therein, for the construction of any building, etc., shall be required to execute the "usual bond," with good and sufficient sureties, with the additional obligation that such contractor shall promptly make payments to all persons supplying materials therefor, and giving all parties, all materialmen and laborers, the right to intervene in any suit instituted on the bond, and to have their rights adjudicated in such action and judgment rendered thereon,

subject, however, to the priority of the claim of the obligee. Section 4 of this act provides that only one suit may be maintained, and that all parties must be interveners in one suit. Section 6 is in the following language:

"In all suits instituted under the provisions of this act, notice of the pendency of such suits shall be made by publication in some newspaper of general circulation published in the county or town where the contract is being performed, if there be such paper; otherwise, in a paper having a general circulation therein, for at least three weeks, the last publication to be at least one week before the trial of said cause. In all suits instituted under the provisions of this act the parties interested shall be summoned as provided by section 3064 of the Code of 1906."

The notice pursuant to this section was addressed "To whom it may concern," and advised all parties that the suit was pending in the court named (naming the court), and the date of the return day, and all other essential requirements of said section 6 quoted *supra*.

Appellant's contention, in effect, is that complainant must make all known persons parties to the suit, and all unknown parties, having an interest in the controversy, parties defendant to the suit, and that known and unknown must be served with process in the usual way.

We think the notice was ample to give notice to all unknown parties who might have claims which could be propounded against the bond, and that all parties had opportunity to come in under this notice, and that it advised them just as certainly as if the notice had been addressed to all unknown parties, or as if all unknown parties had been made parties to the suit.

We cannot say from this record that the complainant knew that any party had any claim, and no contention is here made that any rightful party had not appeared herein.

We do not think there is any merit in this contention.

2. The next point urged by the appellant is as follows:

"That the bond sued on was not a performance bond, but was a bond of pure indemnity; that it was not the usual bond contemplated by chapter 217, Laws of 1918; that it refused and declined to give the bond contemplated by chapter 217, Laws of 1918; that, therefore, the bond did not inure to the benefit of laborers and materialmen, and that it would have deprived the appellant of certain constitutional rights, should the court, by virtue of section 1022, Mississippi Code of 1906, or otherwise, read into the bond the additional obligation to pay laborers and materialmen."

It may be stated, as a fact, that the bond, in form, was a common-law, indemnifying bond, and that it did stipulate that it should not be liable in any manner or form, except as therein set forth, and that no other parties than the obligee should have any rights thereunder. In other words, the bond was executed payable to the owner letting the building contract, indemnifying the owner, and no one else.

The bond was part of the contract, and the contract was made a part of the bond, and the bond was for the purpose of protecting the owner, the municipality, and was the "usual bond" as described in chapter 217, *supra*.

There can be no question about the fact that the bond was executed at a time when said chapter 217 of the Laws of 1918, was in full force and effect. Can the parties make a contract and execute a bond, which contradicts, and is in the teeth of the statute relating to public buildings, when their contract was with a municipality for a public, a school building?

Counsel in his brief, and in his pleadings, mentioned several sections of the Constitution, but presents no argument, nor cites any authority, as to a denial of a constitutional right.

The constitutionality of a contract between private parties, and that particular stipulation that a bond shall inure to the benefit of materialmen and laborers furnishing labor and materials, on a contract was specifically upheld in the case of *U. S. F. & G. Co.* v. *Parsons,* 147 Miss. 335, 112 So. 469.

Section 778, Hemingway's 1927 Code, section 1022, Code of 1906, is in the following language:

"When a bond, recognizance, obligation, or undertaking of any kind shall be executed in any legal proceeding, or for the performance of any public contract, or for the faithful discharge of any duty, it shall inure to the person to whom it is designed by law as a security, and be subject to judgment in his favor, no matter to whom it is made payable, nor what is its amount, nor how it is conditioned; and the persons executing such bond or other undertaking shall be bound thereon and thereby, and shall be liable to judgment or decree on such bond or undertaking as if it were payable and conditioned in all respects as prescribed by law, if such bond or other obligation or undertaking had the effect in such proceeding or matter which a bond or other undertaking, payable and conditioned as prescribed by law, would have had; and where any such bond or undertaking is not for any specified sum, it shall bind the parties executing it for the full amount for which any bond or undertaking might have been required in the state of case in which it was given." —and is applicable, together with chapter 217, Laws of 1918, to the bond in this case.

We are not unmindful of the fact that other jurisdictions have held that where the operating part of a bond is contradictory to the bond required by statute, that the bond will not be rewritten, or will not be construed with reference to the statute, but the bond, as written, will be permitted to stand.

In *Wallace Equipment Co.* v. *Graves,* 132 Wash. 141, 231 P. 458, appellant's contract was sustained, and it

was held that the statute could not be invoked to make an indemnifying bond a performance bond in reality, and to permit other than the obligee to share in the benefit of the bond in case of a breach by the principal.

However, in the case of *Ideal Brick Co.* v. *Gentry,* 191 N. C. 636, 132 S. E. 800, there was a dissent which is in line with authorities taking the contrary view, and in line with the position already assumed by this court on this identical question. To like effect is *Page Trust Co.* v. *Carolina Trust Co.,* 191 N. C. 664, 132 S. E. 804, holding that as it was not nominated in the bond that said bond should inure to the benefit of laborers and materialmen, it could not be construed or written into the bond thus to do, and held to the literal language in which the bond was written.

Contrary views are announced in the cases of *Southern Surety Co.* v. *Klein* (Tex. Civ. App.), 278 S. W. 527; *Globe Indemnity Co.* v. *Barnes* (Tex. Civ. App.), 281 S. W. 215.

Other cases could be cited, but the position of this court has been virtually settled by the statute quoted which provides that the bond shall be construed to be in conformity with the existing statutes, and *Standard Oil Co.* v. *National Surety Co.* (Miss.), 107 So. 559; *Bank of Gulfport* v. *O'Neal,* 86 Miss. 45, 38 So. 630; *U. S. F. & G. Co.* v. *Parsons,* 147 Miss. 335, 112 So. 469, and *Little* v. *Cammack,* 109 Miss. 753, 69 So. 594.

The precise question was decided by this court in *Commercial Bank of Magee* v. *Evans,* 145 Miss. 643, 112 So. 482, wherein Judge ANDERSON, speaking for the court said:

"The statute wrote into Owen's bond the condition it required to be in there. The statute is mandatory. The obligor and the obligee, as well as the sureties on the bond, are presumed to have known what the statute requires when the bond was executed. The bond having been executed, and having accomplished its purpose, the

law will write into the bond what it requires should be written into it. In other words, in the execution of a bond by a contractor to do public work, so far as the condition of the bond is concerned, the law takes care of that, and makes it what it should be.''

. It is clear that the statute may not be ignored by those undertaking to make surety bonds, and the effect of section 778, Hemingway's 1927 Code, and chapter 217 of the Laws of 1918, may not be set aside by parties ignoring the law, or it may be, undertaking to thwart the law by contracting against the statute. It would be far better for those corporations, whose existence and maintenance depends upon following the law, to observe it rather than to flout it, or seek to contract against it. They are under no compulsion to make such bonds, but if they make them, such bonds will be construed and applied as if they had complied with the law.

3. Appellant contends that the demurrer to its cross-bill should not have been sustained wherein it was sought to hold the city for the fifteen per cent. retainage, or so much as was necessary to repay it for any amount it might have to pay to laborers and materialmen.

The court correctly sustained the demurrer to the cross-bill for the reason that the contract plainly shows that the architect had discretion in the matter of payments, and there was no contract specifying that, in all events, fifteen per cent. was to be retained. The architect was allowed to approve eighty-five per cent of the materials as furnished, and it does not follow that there would have been any retainage if the contract had been literally complied with. Besides that, the view taken of the contract is utterly untenable, and no relief can be granted on the cross-bill.

On the cross-appeal of Cagle, Stewart Irby & Co., it is contended that the court erred in dismissing the bill of said parties against the board of education of the city of Jackson, for the reason that the architect selected by

said board had agreed with said parties to withhold from the funds due the principal contractor the amount of their claims, and that notwithstanding this agreement, the architect and the board of education had paid out a considerable amount to the contractor after this agreement, and after their claims had been - filed with the architect.

We know of no rule by which a municipality may be bound by the act of an architect *aliunde* the contract. Neither can it be said that the architect selected by the board of education of a municipality to do the express things required of an architect, independent of, and aside from, the contract, estops the municipality, when it is not shown that such architect is, in any sense, the agent of the city in any capacity which could operate as an estoppel.

The court below so held, and we think reached the correct conclusion.

The decree of the court below is approved in all respects.

*Affirmed.*