**AUSTIN BROS. BRIDGE CO. v. LOVE et al.**

No. 1205—5218.

Commission of Appeals of Texas, Section A.

Jan. 21, 1931.

W. M. Harris, of Dallas, and Lightfoot, Robertson & Scurlock, of Fort Worth, for plaintiff in error.

G. W. Gibson, of Jacksonville, W. H. Shook and Smithdeal, Shook, Spence & Bowyer, all of Dallas, Jones & Jones, of Mineola, R. E. Bozeman, of Quitman, E. E. Hurt, of Dallas, and E. P. Price and Butler, Price & Maynor, all of Tyler, for defendants in error.

HARVEY, P. J.

In October, 1919, Wood county and Harris & Powell, a partnership, entered into a contract in writing whereby, for a specified consideration, Harris & Powell undertook at their own cost and expense to improve certain public roads in said county. Harris & Powell made a bond to the county, with Wesley Love, Sam D. Goodson, and Berl M. Pinkard, as their sureties, conditioned that they would, within the time specified in the contract, perform all the terms and conditions thereof and pay all lawful claims for labor performed and injuries incurred in and about the construction of said road improvements. Among the various stipulations contained in the written contract were the following:

"Partial Payments. On the first Monday of the month for Division No. 1, the first Tuesday for Division No. 2, the first Wednesday for Division No. 3, the first Thursday for Division No. 4, the first Friday for Division No. 5, and the first Saturday for Division No. 6, the Engineer may make current estimate in writing of the materials in place complete and the amount of work performed during the preceding month or period and the value thereof at the unit price contracted for. From the amount so ascertained shall be deducted ten per cent. to be retained until after the completion of the entire work to the satisfaction of the Engineer. No estimate, other than a final estimate, shall be made where the amount earned since the last preceding payment is less than $500.00, unless a written order to do so is given by the Commissioners' Court.

"Final Payments. The action of the Engineer by which the Contractor is to be bound and concluded according to the terms of the contract shall be evidenced by the final estimate, all prior estimates upon which ninety per cent payments may have been made being really partial estimates and subject to corrections in such final estimate. The Engineer, when satisfied that the Contractor shall have completed the work in accordance with the terms of the contract, shall certify the aforesaid final estimate for payment. The Contractor shall check the final estimate for errors, and unless the Engineer is notified within thirty days of any change that the Contractor believes should be made, then the final estimate as rendered shall be considered as the proper and final payment of all

moneys due the Contractor; and the Contractor's acceptance of the final estimate shall constitute a conclusion of the contract in so far as payments due him are concerned, and the said acceptance shall be taken as his acquiescence in the correctness of the final estimate."

Harris & Powell proceeded with the work called for by the contract, and all said work was completed shortly before August 11, 1922, and, on the last-named date, the supervising engineer filed with the commissioners' court a final estimate of the amount due Harris & Powell for the work. Harris & Powell presented no objection to the estimate thus made by the engineer. They were duly adjudged bankrupts in the federal court on August 29, 1922, and were subsequently duly discharged of their liabilities by judgment in the bankruptcy proceedings. They never abandoned said road contract. The trial court found that no settlement of the contract was made on August 11, 1922, and that no settlement thereof has ever been made. There is evidence to support this finding. The evidence shows that the commissioners' court has never formally approved the final estimate filed by the engineer or formally determined the amount due Harris & Powell under the contract. The county still has on hand the sum of $3,223.10, same being a part of the 10 per cent. retainage provided in the contract.

In March, 1920, Harris & Powell borrowed a sum of money from the First National Bank of Mineola, and arranged for the bank to advance to them, from time to time, such other and further sums as needed. To secure payment of all such sums, Harris & Powell, in March, 1920, delivered to the bank a written order directing the county to pay to the bank all sums due and to become due to Harris & Powell under the road contract. This order was filed with the commissioners' court, and the bank, during the progress of the road work, loaned large sums of money to Harris & Powell in accordance with the agreement made when this order was given. There is a balance due the bank by Harris & Powell, of some $12,000 or more. The above-mentioned order has been lost, and proof of its contents was made by parol testimony. The testimony raises a fact issue as to whether the order called for payment to the bank of all sums due and to become due to Harris & Powell under the road contract, or simply such portion as remains after all claims for labor and material are satisfied. The trial court resolved this issue in favor of the bank, and our statement as to the purport of said order is based on such finding of the trial court.

In June, 1921, Harris & Powell sublet to the plaintiff in error, the Austin Bridge Company, certain bridge work called for by the

road contract. The bridge company performed this bridge work, and there is a balance of $1,913.21 due the company therefor. On August 29, 1921, Harris & Powell assigned to the bridge company, to the extent of the amount due for said bridge work, the sums accruing under the road contract. On September 27, 1923, this suit was filed by the bridge company against Harris & Powell and the sureties on their bond to recover this balance due. The county was also made party defendant, and a recovery of said sum of $1,913.21 was sought against the county, from the retainage in the hands of the county. Wesley Love, one of the sureties, died pending the suit, and his widow, Mrs. Texana Love, was made a party defendant in her individual capacity, and as independent executrix of the will of her husband. The First National Bank of Mineola intervened and set up its claim to the retainage held by the county. The J. D. Jones Construction Company and L. D. Calloway also intervened in the suit and set up their respective claims for labor and material furnished to Harris and Powell in said road work. The amount of the claim of the Jones Construction company is $2,143, and that of Calloway is $800. These several interveners sought recovery against the sureties on the Harris & Powell bond, and also to charge the amount of retainage in the hands of the county with their claims. Wood county, in answer to the plaintiff's petition and to all petitions in intervention, pleaded general denial, and, among other things, specially pleaded that the county "has had no final settlement with Harris and Powell, but alleges that if it is indebted to the said Harris and Powell in any sum, that same is being claimed by plaintiff and defendants, interveners in this case, and defendant, Wood County is ready to pay same to whom it may be due as determined by this court."

The case was tried to the court without a jury, and judgment was rendered as follows: In favor of the Mineola Bank against Wood county for the $3,223.10 retainage in the hands of the county; against Mrs. Texana Love, as independent executrix, and B. M. Pinkard and Sam Goodson, in favor of the Austin Bridge Company, for $1,913.21, with interest, and in favor of the J. D. Jones Construction Company for $2,130.60, and in favor of L. D. Calloway for $796.16, with interest. A recovery of anything against Harris & Powell by any of the parties was denied because of their discharge in bankruptcy. The bridge company and the interveners (except the Mineola bank) were denied the recovery they respectively sought against Wood county; and all interveners, as well as the Austin Bridge Company, were denied the recovery they sought against Mrs. Texana Love individually; and the Mineola bank was denied the recovery it sought against Mrs. Texana

Love as independent executrix, and Sam D. Goodson and B. M. Pinkard. Thereupon the bridge company prosecuted an appeal from the judgment so far as same denied it a recovery of anything against Wood county and against Mrs. Texana Love individually; and Mrs. Texana Love, Sam D. Goodson, and B. M. Pinkard prosecuted an appeal therefrom so far as it was against them. The Court of Civil Appeals reversed the judgment of the trial court in so far as it was against said three last named parties, and reformed said judgment so as to deny a recovery against them by the Austin Bridge Company, J. D. Jones Construction Company, and L. D. Calloway. As so reformed the judgment of the trial court was affirmed. 5 S.W.(2d) 570. The Austin Bridge Company alone applied for the writ of error, which has been granted.

■ The contract between the county and Harris & Powell gives rise to no right in favor of the bridge company in the retainage fund of $3,223.10 held by the county. According to the terms of the contract, such retainage was provided as security to the county for the completion of the "entire work" to the satisfaction of the engineer. The county makes no complaint as to the completion of said work. Nothing appears in the contract which tends to show that the intent of the stipulation for retainage is to secure the claims of laborers and materialmen.

■■ The mere fact that the bridge company furnished labor and material for the doing of the work does not give rise to an equitable claim, in favor of the bridge company, to any sums which became due from the county under its contract with Harris & Powell; and the equitable assignment of said sums to the Mineola bank, by Harris & Powell, being prior in point of time to the assignment made to the bridge company, gives the bank the superior right to said sums, as against the bridge company. Harris County v. Donaldson, 20 Tex. Civ. App. 9, 48 S. W. 791; Hess v. Turney, 110 Tex. 148, 216 S. W. 621.

■■ The record, as it appears before us, discloses that the bond which was given by Harris & Powell furnishes the bridge company the only security it has. This bond, by virtue of a provision to that effect contained in article 5160 of the statutes, which statutory provision is to be read into the bond, binds the contractors and their sureties to those who furnished labor and material in the work, for the payment of claims for the labor and material so furnished. In this respect, the laborers and materialmen are the real obligees in the bond, and in all other respects the county is the real obligee. The county has no authority to release the sureties of their liability to laborers and materialmen. Equitable Surety Company v. Mc-

Millan, 234 U. S. 448, 34 S. Ct. 803, 58 L. Ed. 1394.

■ It is contended by the sureties that, prior to the filing of this suit by the bridge company, more than one year since the "completion and final settlement" of the contract between the county and Harris & Powell had elapsed. They say that, for this reason, the right of action on the bond, which is accorded to the bridge company by the provisions of article 5161 of the statutes, had been lost or become barred under the provisions of article 5162. The trial court, as well as the Court of Civil Appeals, has found that the work under said contract was completed on August 11, 1921. There is evidence to sustain this finding. But there is no evidence of legally sufficient probative force to show that there has been a "final settlement" of said contract, within the meaning of the statute. In fact, the evidence conclusively shows that a "final settlement" of the contract, as contemplated by the statute, has never been made. The "final settlement" meant by the statute is the formal determination by the commissioners' court, in cases involving a contract with a county, of the amount finally due by or to the county under the contract. For the commissioners' court of a county is invested by law with the duty and authority to act for the county in the settlement of accounts involving the question of liability of the county. The Legislature has not undertaken to delegate this authority to any one else. In passing on the intent of a similar federal statute, the Supreme Court of the United States, in Illinois Surety Co. v. U. S., Use of Peeler, 240 U. S. 221, 36 S. Ct. 321, 323, 60 L. Ed. 609, said: "We should not say, of course, that instances may not be found in which the word 'settlement' has been used in acts of Congress in other senses, or in the sense of 'payment.' But it is apparent that the word 'settlement' in connection with public contracts and accounts, which are the subject of prescribed scrutiny for the purpose of ascertaining the rights and obligations of the United States, has a well-defined meaning as denoting the appropriate administrative determination with respect to the amount due. We think that the words 'final settlement' in the act of 1905 had reference to the time of this determination when, so far as the government was concerned, the amount which it was finally bound to pay or entitled to receive was fixed administratively by the proper authority. It is manifestly of the utmost importance that there should be no uncertainty in the time from which the six months' period runs. The time of the final administrative determination of the amount due is a definite time, fixed by public record and readily ascertained. As an administrative matter, it does not depend upon the consent or agreement of the other party to the contract or account. The authority to make it may not be suspended, or held in abeyance, by refusal to agree. Whether the amount so fixed is due, in law and fact, undoubtedly remains a question to be adjudicated, if properly raised in judicial proceedings, but this does not affect the running of the time for bringing action under the statutory provision."

■ The evidence in the instant case shows that the commissioners' court of Wood county has never formally determined the amount due by the county under the contract or passed any order to that effect. The tacit acceptance by the court, of the final estimate of the engineer, as fixing the amount due under the contract, does not constitute such a "final settlement" as the statute contemplates. The limited right of laborers and materialmen, to sue on the bond given by the contractor, rests upon a more secure foundation than mere implication arising from informal acts of the commissioners' court. Inasmuch as the statute gives the laborer and materialman no right of action on the contractor's bond, made in pursuance of the statute, until after "final settlement" of the contract, it follows that no right of action against the sureties on the bond of Harris & Powell had accrued to the bridge company when this suit was commenced. There can be no doubt, however, that the members of the commissioners' court may be compelled, at the instance of the bridge company, in a proper proceeding for that purpose, to proceed in the performance of their duty to make a 'final settlement" of the contract.·

The judgment of the trial court and of the Court of Civil Appeals should be reversed, and the cause remanded, and we so recommend.

CURETON, C. J.

The judgments of the district court and Court of Civil Appeals are both reversed, and the cause remanded, as recommended by the Commission of Appeals.

We approve the holdings of the Commission of Appeals on the questions discussed in its opinion.