194 So. 194

UNIVERSAL ELECTRIC CONST. CO. OF,
ALABAMA et al. v. ROBBINS.

8 Div. 15.

Supreme Court of Alabama.

Feb. 22, 1940.

E. B. Black, of Boaz, and Brown & Conway, of Albertville, for appellants.

H. G. Bailey, of Boaz, for appellee.

Stockton Cooke, Jr., of Sheffield, for appellants.

R. L. Polk, of Sheffield, and J. E. Delony, Jr., of Tuscumbia, for appellee.

**KNIGHT, Justice.**

The appeal in this cause was taken from an order or judgment of the circuit court granting the plaintiff a new trial. While the bond given on the appeal does not state in terms that the appeal was from the judgment granting a new trial to plaintiff, yet that was the purpose and scope of the appeal.

The first submission here of this cause was on motion of appellee to strike the bill of exceptions and to dismiss the appeal. On that submission we held that the bill of exceptions was not filed within ninety days after the judgment was entered on the motion for new trial, and the bill of exceptions was stricken, but we refused to dismiss the appeal.

The judgment granting the motion for new trial served to restore the case to the trial docket, and as no order was made by the court which is reviewable on appeal in the present state or status of the case, it follows that the case, in so far as presented by the appeal, must be affirmed.

However, along with the appeal, the appellants seek by mandamus to review a certain ruling or rulings of the lower court, in overruling their motion to quash the service of the summons and complaint attempted to be made upon them. For the purpose of moving to quash the service each of the defendants appeared specially.

The record shows that the summons and complaint was "executed by serving two copies thereof, one for the Universal Electric Construction Company of Alabama, a corporation, and one for the Royal Indemnity Company, a corporation, on L. M. Manning, President of the Board of City Commissioners of the City of Sheffield, Alabama." A proper determination of the question of whether the defendants—appellants—were legally served with the process issuing upon the complaint filed against them, depends upon whether the bond executed by the said Universal Electric Construction Company of Alabama, as principal, and the Royal Indemnity Company as its surety was such a bond as was required to be executed by the contractor and his surety by the provisions of the Act of the Legislature of 1935, General Acts, 1935, p. 70, or was it so intended by the parties thereto. If so, obligors' liability is governed thereby. Magic City Paint & Varnish Co. v. American Surety Company of New York, 228 Ala. 40, 152 So. 42; United States Fidelity & Guaranty Co. v. Benson Hardware Co., 222 Ala. 429, 132 So. 622; United States Fidelity & Guaranty Co. v. Yeilding Bros., 225 Ala. 307, 143 So. 176; Limestone County v. Montgomery, 226 Ala. 266, 146 So. 607, 87 A.L.R. 164; American Book Co. v. State, 216 Ala. 367, 113 So. 592; Royal Indemnity Co. v.

Young & Vann Supply Co., 225 Ala. 591, 144 So. 532.

The suit was brought by Dewey Robbins, doing business under the style and name of Tri-Cities Plumbing and Electrical Supply Company, against the Universal Electric Construction Company, who had entered into a contract with the City of Sheffield for the construction of an electric distribution system, and against the Royal Indemnity Company, who was surety on the bond sued on. This bond was made payable to the City of Sheffield, Alabama, as the applicable Act required.

The complaint avers that the plaintiff, under its contract with the Universal Electric Construction Company, furnished the said contractor labor, materials and supplies for and in the prosecution of the work provided for in the contractor's said contract with the City of Sheffield, to the amount of $3,500, and that said amount was past due and unpaid, etc.

Section 1 of the Act above referred to reads: "Any person, firm or corporation entering into a contract with the State or any County or municipal corporation or sub-division thereof in this State for the repair, construction or prosecution of any public buildings or public work, highways or bridges, shall be required, before commencing such work, to execute a performance bond, with penalty equal to 50 percent of the amount of the contract price, and in addition thereto, another bond with good and sufficient surety, payable to the State, County or municipal corporation or subdivision, letting the contract, in an amount not less than 50% of the contract price, with the obligation that such contractor or contractors shall promptly make payments to all persons supplying him or them with labor, materials, feed-stuffs or supplies for or in the prosecution of the work provided for in such contract, and for the payment of reasonable attorneys fees, incurred by successful claimants or plaintiffs in suits on said bond; and any person, firm or corporation that has furnished labor, materials, feed-stuffs or supplies for or in the prosecution or repair of any public building or public work, highways or bridges, and payment for which has not been made, shall be authorized to institute an action upon said bond in his or their name or names and to have their rights and claims adjudicated in such action and judgment rendered thereon; provided, however, that no suit shall be instituted on said bond until after forty-five days written notice to the surety thereon of the amount claimed to be due and of the nature of the claim. Such suit shall be commenced not later than one year from the date of final settlement of said contract. The giving of said notice by registered mail, postage prepaid, addressed to the surety at any of its places of business or offices shall be deemed sufficient hereunder. In the event the surety or contractor fails to pay such claim in full within forty-five days from the mailing of such notice, then such person or persons shall be entitled to recover of the contractor and surety, in addition to the amount of said claim, a reasonable attorney's fee, together with interest on such claim from the date of such notice. Every person or persons having a right of action on said last described bond as herein provided shall, upon written application to the authority under the direction of whom such work has been prosecuted, setting out that labor, material, feed-stuffs or supplies for such work has been supplied by him or them and that payment therefor has not been made, be promptly furnished a certified copy of said additional bond and contract. Such claimant shall be authorized to bring suit on said bond in the county in which the work provided for in said contract is to be performed, or in any county where the contractor or his surety does business, for his or their use and benefit against said contractor and his surety or either of them. In addition to any other legal mode of service, service of summons and other process in suits brought in the county where the work is let or done may be had on the contractor and/or the surety on the last described bond, by leaving a copy of the summons and complaint or other pleading or process, with the Chairman of the State Highway Commission if the contract be a state highway contract or with the executive officer of the city, town, board, commission or authority letting the contract, or charged with the payment of the contract price, if the contract be not a state highway contract. The bond last described shall have a provision binding the principal contractor and surety to the mode of service above described; and consenting that such service shall be the same as personal service on the contractor and/or surety. Immediately on service being made on the Chairman of the State Highway Commission or executive officer[r] of a city, town, board, commission

or authority, it will be the duty of such Chairman or executive officer to immediately mail a copy of such process to the contractor and surety, at the address given in the bond."

The bond executed by the said contractor and its surety, the said Royal Indemnity Company, appears in the report of the case.

Both the contract of the said Universal Electric Construction Company with the City of Sheffield and the bond executed by the contractor and its surety, the Royal Indemnity Company, are set out in extenso in the complaint.

It is to be noticed that the bond contains this provision: "Now therefore, if the principal shall promptly make payment to all persons supplying labor in the prosecution of the work provided for in said contract, and any and all duly authorized modifications of said contract that may hereafter be made, notice of which modifications to the surety being hereby waived, then this obligation to be void; otherwise to remain in full force and virtue."

No mention whatever is made of any obligation to pay persons supplying the contractor "materials, feed-stuffs or supplies for or in the prosecution of the work provided for in such contract," or "for the payment of reasonable attorneys fees, incurred by successful claimants or plaintiffs in suits on said bond." Nor does the bond contain a provision binding the principal contractor and surety to the mode of service (of suits) provided for in the Act.

It is contended by appellants that the bond cannot be held to be a statutory bond, inasmuch as it is not in substantial compliance with the above quoted act, and also that the construction by the city of an electric distribution system was not a "public work" within the meaning of said act, and, therefore, the attempted service of the suit upon the defendants, by service upon the President of the Board of City Commission of the City of Sheffield was wholly insufficient to bring these defendants before the court, to answer in said cause.

The contention that the construction of an electric distribution system for said city was not within the terms of said act is, we are fully persuaded, without merit.

While the statute—Act of 1935, supra—does not prescribe the form of the bond, it does prescribe the obligations that the obligors, principal and surety, shall assume thereby.

The bond recites: "The condition of this obligation is such, that whereas the principal entered into a certain contract hereto attached, with the City of Sheffield, Alabama, dated February 27, 1937, for the construction of street lighting system in a substantial and workmanlike manner in full compliance with specifications numbered 28 to 53, both inclusive, and the applicable plans designated on page 29 of specifications, all of which pages by reference thereto, are made part of this contract."

These parties-defendant, the Universal Electric Construction Company and the Royal Indemnity Company, well knew that, before the contractor could lawfully commence the construction of said electric distribution system, the contractor was required to execute bond to the said municipality, with the obligation that such contractor should promptly make payment to all persons supplying him *with labor, materials, feed-stuff* or supplies for or in the prosecution of the work provided for in such contract, and for the payment of reasonable attorney's fees incurred by successful claimants or plaintiffs in suits on said bonds. They further knew that the contract should carry a further provision that process in suits might be served upon them by service upon the executive officer of the city. Knowing these facts, these defendants knew that whatever bond they might execute, in any attempted compliance with said Act, would have read into it the provisions of said Act.

The bond was signed by the defendants and offered by them, and accepted by the city, as a bond executed in compliance with the above referred to Act, and the court is authorized to read into it the provisions of said Act, and give it the form and effect the statute contemplated, regardless of its contents. United States Fidelity & Guaranty Co. v. Union Trust Co., 142 Ala. 532, 38 So. 177; Ex parte Martin, 180 Ala. 620, 61 So. 905; Mobile County v. Williams, Judge, 180 Ala. 639, 61 So. 963. It is true that the bonds treated of in the above cited cases were official bonds, and came within the influence of statutory provisions with reference to such bonds. Nevertheless the bond now in question was executed and delivered pursuant to a statutory requirement, by which the terms and

scope of the bond were fixed by the statute.

The contract of the Universal Electric Construction Company with the City of Sheffield was not only referred to in, but was attached to, and made a part of, the bond sued on. This contract provided that the said Universal Electric Construction Company should furnish at its expense all labor, materials and equipment, etc., for the execution and completion of the said electric distribution system. With these terms and conditions of the contracts the said Royal Indemnity Company, surety, was fully advised before executing the bond in question.

■ It was the purpose of the Act of 1935 to protect not only laborers, but also those who might furnish materials and feed-stuff or supplies "for or in the prosecution of the work provided for in [the] contract." This the defendants, and each of them, well knew at the time they executed the bond, and the fact that the bond executed by them, and now sued on, limited recovery thereon to such persons as might perform labor on the public work cannot "serve to restrict the liability written into the bond by the law in favor of those protected thereby." Fidelity & Casualty Co. of N. Y. v. Jacks, 231 Ala. 394, 165 So. 242, 246; American Book Co. et al. v. State, 216 Ala. 367, 113 So. 592; Royal Indemnity Co. v. Young & Vann Supply Co. et al., 225 Ala. 591, 144 So. 532; Limestone County v. Montgomery, Superintendent of Banks, 226 Ala. 266, 146 So. 607, 87 A.L.R. 164; Magic City Paint & Varnish Co. v. American Surety Co. of New York, 228 Ala. 40, 152 So. 42; Hipp v. Prudential Casualty & Surety Co. of St. Louis, 60 S.D. 300, 244 N.W. 346; Baumann v. West Allis, 187 Wis. 506, 204 N. W. 907.

In the case of Globe Indemnity Co. v. Barnes, Tex.Com.App., 288 S.W. 121, 123, it was held: "The execution of the bond conditioned as required by the statute is made a condition precedent to the right to commence such work. Such a contract can only be carried out lawfully after the execution of the bond as required by statute. The effect of the statute is to declare the liability of one executing the bond for such a contractor. The law will not compel one to enter into contract, but in a proper case it may fix the liability of one who voluntarily does contract. The principle is akin to the familiar rule that a common carrier will not be permitted to limit its common-law liability. That the Legislature did intend liability to exist in favor of those furnishing material or labor to the contractor, whether the bond expressly so agrees or not, is manifest by the authority conferred on such persons to sue the bondsmen. It is only where there is no express contractual liability that such portion of the statute could have any force or be needed. Where the bond so stipulates, such parties have their cause of action without the statute. It is contractual. All persons are presumed to know the law and to contract with reference thereto. Every surety company or other person acting as surety for contractors in the construction of such public works must be held to know the requirements of the law, and, when he becomes surety upon the contractor's bond in such a case, he does so with a full knowledge that the contract can only proceed upon a bond conditioned for the protection of labor and materialmen, and his executing as surety at all evidences indisputably his assent to be bound according to the liability prescribed by the statute. By executing the bond as surety, he necessarily assents that the terms of the statute become a part of his obligation. He will not be heard to say he did not agree to the terms of the statute. In no other way could his principal's contract be carried out. The minor purpose to limit that liability is repugnant to the major purpose to execute the bond so as to enable the contractor to proceed. The attempted limitation is in violation of the statute, and therefore void. The statute will be read into the bond as though its terms had been strictly complied with."

■ There was, of course, no compulsion upon the surety to execute the bond, but it did so; and having done so, and knowing the purpose for which the bond was given, and being charged with knowledge of the law which required the bond, it, the bond must be "construed and applied as if they had complied with the law." In short, the law is written into the bond. Union Indemnity Co. v. Acme Blow Pipe & Sheet Metal Works, 150 Miss. 332, 117 So. 251; Fogarty v. Davis, 305 Mo. 288, 264 S.W. 879; Metz v. Warrick, 217 Mo. App. 504, 269 S.W. 626; Multnomah County v. United States Fidelity & G. Co., 92 Or. 146, 180 P. 104; Austin Bros. Bridge Co. v. Love, Tex.Com.App., 34 S.W.2d 574; Philip Carey Co. v. Maryland Casual-

ty Co., 201 Iowa, 1063, 206 N.W. 808, 47 A.L.R. 495; 11 Corpus Juris Secundum, Bonds, page 420, § 40(e).

The Supreme Court of Oregon in the case of Portland v. New England Casualty Co., 78 Or. 195, 152 P. 253, 254, observed, in connection with a statute making it the duty of public officers to require of the contractor a bond conditioned for the payment of laborers and materialmen, and authorizing such persons to sue thereon: "In the execution of such an instrument the parties thereto are presumed to have had notice of and taken into consideration and understood the statute authorizing the same. The provisions of the act are practically made a part of the bond, just' as though they were incorporated therein." And in the case of Reiff v. Redfield School Board, 126 Ark. 474, 191 S.W. 16, it was held that a statute requiring a bond for the protection of persons furnishing labor and materials for the construction of public buildings was a part of the bond given pursuant thereto. To the same effect is the holding in the case of Board of Education ex rel. Philip Carey Co. v. United States Fidelity & G. Co., 155 Mo.App. 109, 134 S.W. 18; Hub Hardware Co. v. Aetna Acc. & Liability Co., 178 Cal. 264, 173 P. 81.

In the case of Guaranteed Gravel & Sand Co. v. Aetna Casualty & S. Co., 174 Minn. 366, 219 N.W. 546, 550, the court said: "The parties intended to comply with the statute. The contract and bond were made in reference to the statute. The purpose of the parties being established to be the same as the purpose of the statute, the joint purpose cannot be defeated by a failure to write into the contract and bond one of the provisions of the statute, whether such omission is due to the voluntary act of the parties or is attributable to their oversight or inadvertence. Under such circumstances the law imputes such provisions to the contract, whether written therein or not. In such a situation the contract is made in reference to the law, which is read into the contract and out of which the liability arises. * * * The statute is a part of such contract whether embraced within the written language thereof or not, and its faithful performance means that the requirements of the law must be met."

So, in the case of Tug River Lumber Co. v. Smithey, 107 W.Va. 482, 148 S.E. 850, it was held that, where a contract provided that the contractor would execute a bond to satisfy the claims of mechanics and materialmen, a bond executed under such a contract, and referring thereto, would be deemed to be a statutory bond and would be read and construed in the light of the statute imposing upon the public body the duty to require a bond for the benefit of materialmen and mechanics, so that a laborer and materialmen could recover on the bond.

We are at the conclusion, and so hold, that the parties must have intended to execute a statutory bond; that we are authorized to read into it the obligations imposed by the statute; and among those obligations is the consent of the principal and surety to be bound by the service of process fixed and prescribed by the Act, viz; by service upon the executive officer of the City of Sheffield.

It follows, therefore, that the court committed no error in overruling the defendants' (appellants') motion to quash the service of process. Mandamus will accordingly be denied.

Affirmed on appeal; and mandamus denied.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.