BRADLEY, Judge.
Bagby Elevator & Electric Company, Inc., a corporation, appeals from a summary judgment holding that it cannot recover attorney fees from Orlin Buzbee, d/b/a Buzbee Contracting Company, and Balboa Insurance Company. We affirm.
Bagby Elevator & Electric Company, Inc., a corporation (hereinafter referred to as “Bagby”) filed suit in the Circuit Court of Jefferson County, Alabama against two defendants for- work and labor done. Defendant, Orlin Buzbee, d/b/a Buzbee Contracting Company (hereinafter referred to as “Buzbee”) filed a plea in bankruptcy, and defendant, Balboa Insurance Company (hereinafter referred to as “Balboa”) filed a motion to dismiss for failure to state a claim under Rule 12(b)(6), ARCP. . When this motion was overruled, Balboa later filed an answer claiming the following defenses: (a) failure to state a claim; (b) improper notice under § 39-1-1, Code of-Alabama 1975; (c) denied appellant’s entitlement to attorney’s fee or interest; and (d) the statute of limitations.
A motion for summary judgment was filed by Bagby on May 26,. 1978 based on the pleadings, request for admissions of both defendants Buzbee and Balboa, the truthfulness of which was- admitted by operation of law on Buzbee’s part for failure to admit or deny the same..
The court granted Bagby partial summary judgment in the amount of the original *171 claim of $10,170.33 on June 15, 1978, and ordered that the issue of interest and the issue of a reasonable attorney’s fee be disposed of by trial.
Balboa thereafter filed a motion for summary judgment on July 6, 1978 that Bagby was not entitled to attorney’s fee as a matter of law under § 39-1-1, Code of Alabama 1975 as the Industrial Water Board of the City of Birmingham is not a municipal corporation or a subdivision thereof, or any other government entity in which case attorney fees are allowed.
On July 10, 1978 Bagby filed a counter motion for summary judgment asking the court to grant to Bagby interest and attorney fees under § 39-1-1, Code of Alabama 1975 and simultaneously entered a denial of the averments of Balboa’s motion. The court, on July 20, 1978, overruled both motions, whereupon the remaining issues for trial were interest and attorney’s fee, which was set for trial on March 21,1979 before a jury.
Before the trial was commenced, however, both parties reasserted previously filed motions for summary judgment. The circuit court held a pre-trial hearing on the motions. The defendant Buzbee did not appear, as he had previously filed a plea in bankruptcy. On March 26, 1979 the court granted to Bagby, as a matter of law, the interest on the amount of the original claim, and granted Balboa Insurance Company’s motion for summary judgment on the question of attorney fees.
Bagby filed notice of appeal, but, thereafter, a motion was filed with this court requesting us to remand the appeal to the circuit court for the purpose of certifying the court order under Rule 54(b), ARCP. We granted the motion on May 2, 1979, and on May 8, 1979 the trial court certified the orderi Bagby subsequently filed a notice of appeal to this court.
It should be noted at this point that there is no dispute as to the factual matters leading to the lawsuit, as there was a contract between the Industrial Water Board of the City of Birmingham and Buzbee Contracting Company, the contract covering public works in furthering the distribution to the public of drinking waters and for use by industrial customers. There is no dispute that the work performed by Bagby was accomplished and in a good and workmanlike manner, nor is there a dispute that the water board is a public corporation organized under Code of Alabama 1975, § 11-50-231. Thus, the only two issues beforé the court are, first, whether the trial court erred in holding that Balboa Insurance Company was entitled to summary judgment in their favor as to the issue of attorney fees; and, second, whether the bond executed by Buzbee and issued by Balboa was furnished pursuant to the provisions of § 39-1-1, Code of Alabama 1975.
Bagby asserts that Balboa’s motion for summary judgment should not have been granted. Bagby cites us to that portion of the committee comments to Rule 56, ARCP which quote from 3 Barron & Holtzoff, Federal Practice and Procedure, § 1231 (1958), as follows:
The summary judgment procedure is not a substitute for the trial of disputed issues of fact. On a motion for summary judgment, the court cannot try issues of fact. It can only determine whether there are issues to be tried.
Bagby further noted the comment made by the committee that:
[I]f there is a scintilla of evidence supporting the position of the party against whom the motion is made, so that at a trial he would be entitled to go to the jury, summary judgment cannot be granted.
The scintilla rule in Alabama has been stated in Union Central Life Ins. Co. v. Scott, 286 Ala. 10, 236 So.2d 328 (1970):
The rule in this state is that in civil cases the question must go to the jury if the evidence or the reasonable inferences therefrom furnish a mere gleam, glimmer, spark, the least bit, the smállest trace, a scintilla, in support of the theory of the complaint.
Bagby claims that both defendants failed to admit or deny the averments in the sup *172 plementary request for admissions, and that this is sufficient to raise a scintilla of evidence to defeat a motion for summary judgment. Although the record shows that Buzbee, who had filed a plea in bankruptcy, did not answer the request, Balboa Insurance Company did. Therefore, the only admission by failure to admit or deny is on the part of Buzbee, and not Balboa. Also Bag-by claimed in his motion' for summary judgment interest and attorney fees and thus, in effect, that there was no scintilla of evidence to require the issue to go to the jury. Yet, now, Bagby claims that on Balboa’s motion for summary judgment for attorney fees, there is a scintilla of evidence and thus the motion should have been denied.
The second issue addressed by Bagby is that he is entitled to attorney fees under § 39-1-1, Code of Alabama 1975, as well.
This Code section states:
(a) Any person, firm or corporation entering into a contract with the state or any county or municipal corporation or subdivision thereof in this state for the repair, construction or prosecution of any public buildings or public work, highways or bridges shall be required, before commencing such work, to execute a performance bond, with penalty equal to 100 percent of the amount of the contract price, and, in addition thereto, another bond with good and sufficient surety, payable to the state, county or municipal corporation or subdivision letting the contract, in an amount not less than 50 percent of the contract price, with the obligation that such contractor or contractors shall promptly make payments to all persons supplying him or them with labor, materials or supplies for or in the prosecution of the work provided for in such contract and for the payment of reasonable attorneys’ fees incurred by successful claimants or plaintiffs in civil actions on said bond.
However, Bagby admits in his brief and by affidavit that the Industrial Water Board of the City of Birmingham is not a subdivision of the state, county or municipal government, but is a public corporation formed pursuant to the 1975 Code of Alabama, § 11-50-231.
Bagby further asserts that since the Alabama public bonding statute was taken from the Miller Act, Tit. 40, § 270a U.S.C.A. (West), which is the federal public bonding act, that the decisions thereunder are authoritative. Bagby quotes from State v. Southern Surety Co., 221 Ala. 113, 127 So. 805 (1930) in which the Alabama Supreme Court stated:
The doctrine that a Legislature, in enacting a statute from another jurisdiction, enacts it with its authoritative interpretation, is universal and firmly established. .

. The rule is that the borrowed statute is presumed to come with its authoritative interpretation.
Bagby also quotes from Water Works, Gas & Sewer Board v. P. A. Buchanan Contracting Co., 294 Ala. 402, 318 So.2d 267 (1975) which held:
It is clear that a public works performance bond required by Tit. 50, § 16, carries with it the federal interpretation of the Miller Act.-
However, as Balboa notes, this case does not apply, as the issue in the Buchanan decision was whether a surety was liable under its performance bond for a tort claim. Also, all the parties in the decision seemed to admit that the public bonding statute applied in that case. Furthermore, as Balboa points out, it appears that the contract was with the City of Oneonta. Balboa further notes that the federal act does not apply to the portions of the Alabama act which are different from the Miller Act. This act includes any contract for the construction of any public building or- public work of the United States.
Section 270a of the Miller Act reads:
Bonds of contractors for public buildings or works; waiver of bonds covering contract performed in foreign country
(a) Before any contract, exceeding $2,000 in amount, for the construction, alteration, or repair of any public build *173 ing or public work of the United States is awarded to any person .
Section 39-1-1 of the 1975 Code of Alabama reads:
(a) Any person, firm or corporation entering into a contract with the state or any county or municipal corporation or subdivision thereof in this state . . .
Therefore, it is obvious that Alabama requires the existence of a contract with the state, county, municipal corporation, or subdivision thereof. We find that the Alabama section, and not the Miller interpretation, applies in this case.
Universal Electric Construction Co. v. Robbins, 239 Ala. 105, 194 So. 194 (1940) is cited by Bagby for the proposition in reference to the Alabama bonding statute that:
There was, of course, no compulsion upon the surety to execute the bond, but it did so; and having done so, and knowing the purpose for which the bond was given, and being charged with knowledge of the law which required the bond, it, the bond must be “construed and applied as if they had complied with the law.”
However, this case does not apply to the present case, as the contract in the Robbins case was with the city itself and not with the Board. Balboa is correct in asserting that if a surety writes a bond for the city, county, state or its political subdivision, that the public bonding statute will be read into the bond and be considered a part of the bond. In the present case, the contract is with the Water Board and not the city. Therefore, this court finds that the Alabama public bonding statute will not be read into the bond issued by Balboa and executed by Buzbee. Coxe v. Water Works Board, 288 Ala. 332, 261 So.2d 12 (1972); George A. Fuller Co. v. Vulcan Materials Co., 293 Ala. 199, 301 So.2d 74 (1974).
In the case at bar the bond was written by Balboa with the Industrial Water Board as obligee. The contract between Balboa’s principal, Buzbee, and the Industrial Water Board was for the completion of additions to booster and intake pumping stations and the Board’s Sipsey system. The work was not being performed for the city. The record also does not reflect that the bond was being furnished pursuant to any bonding statute. Thus, in the absence of an agreement for the payment of attorney fees to Bagby, there is no provision for attorney fee payments to Bagby Elevator Company from any source, and this court holds Balboa is not liable for the payment of such fees. Accordingly, we find that the trial court was correct in granting summary judgment for Balboa on the issue of attorney fees. Consequently, the judgment of the trial court is affirmed.
AFFIRMED.
WRIGHT, P. J., and HOLMES, J., concur.