BEATTY, Justice.
Appeals by defendants, Harrington Construction Corporation (Harrington) and United States Fidelity & Guaranty Company (USF & G), from judgments for the plaintiff, Couch, Inc., in the plaintiff’s action brought to recover money damages, interest, and attorneys’ fees under a payment bond. We reverse and remand.
On October 16, 1981, Harrington entered into a contract with the City of Samson, Alabama, under which Harrington was engaged to make certain sewer improvements. On that same date, Harrington contracted with USF & G for a surety bond to insure payment on the project. This payment bond, executed on a Farmers Home Administration form, designated Harrington as principal and USF & G as surety, binding them to the City of Samson, as owner, and the United States of America, as government, and “unto all persons, firms, and corporations who or which may furnish labor, or who furnish materials to perform as described under the contract.” Later, on November 17, 1982, Harrington subcontracted with Couch, Inc., for the paving work required under Harrington’s contract with the City.
On December 22, 1982, Couch notified Harrington of its completion of the paving work and requested payment of $18,890. Payment was not made, and Couch again requested payment on March 31, 1983. Harrington neither responded nor made payment.
*615 Couch, on April 8, 1983, made a claim for payment upon USF & G by letter, with copies of the claim being sent to Harrington and the City of Samson. USF & G received the claim on April 12, 1983. Then, Couch filed this action on April 20, 1983, for breach of contract against Harrington and USF & G.
Following the denial of the defendants’ motion to dismiss, USF & G made a formal offer to allow judgment against it in the amount of $18,890. This amount was paid into court. Couch refused this offer, because it did not include an amount representing interest and attorneys’ fees. Partial summary judgment was then granted to Couch, with the amount of attorneys’ fees reserved for jury determination. A jury returned a verdict in favor of Couch for attorneys’ fees in the amount of $4,500. Harrington and USF & G appeal from the judgments entered upon that verdict. Couch has filed in this Court, under Rule 21(c), A.R.A.P., its petition for additional attorneys’ fees of $750 for services on this appeal.
It is important to observe that the contract made by the City of Samson and Harrington was one with a political subdivision for public works; therefore, Code of 1975, § 39-1-1, came into play:
“(a) Any person, firm or corporation entering into a contract with the state or any county or municipal corporation or subdivision thereof in this state for the repair, construction or prosecution of any public buildings or public work, highways or bridges shall be required, before commencing such work, to execute a performance bond, with penalty equal to 100 percent of the amount of the contract price, and, in addition thereto, another bond with good and sufficient surety, payable to the state, county or municipal corporation or subdivision letting the contract, in an amount not less than 50 percent of the contract price, with the obligation that such contractor or contractors shall promptly make payments to all persons supplying him or them with labor, materials or supplies for or in the prosecution of the work provided for in such contract and for the payment of reasonable attorneys’ fees incurred by successful claimants or plaintiffs in civil actions on said bond.
“(b) Any person, firm or corporation that has furnished labor, materials or supplies for or in the prosecution or repair of any public building or public work, highways or bridges and payment for which has not been made shall be authorized to institute a civil action upon said bond in his or their name or names and to have their rights and claims adjudicated in such civil action and judgment entered thereon; provided, that no civil action shall be instituted on said bond until after 4-5 days’ written notice to the surety thereon of the amount claimed to be due and of the nature of the claim. Such civil action shall be commenced not later than one year from the date of final settlement of said contract. The giving of said notice by registered or certified mail, postage prepaid, addressed to the surety at any of its places of business or offices shall be deemed sufficient under this section. In the event the surety or contractor fails to pay such claim in full within 45 days from the mailing of such notice, then such person or persons shall be entitled to recover of the contractor and surety, in addition to the amount of said claim, a reasonable attorneys’ fee, together with interest on such claim from the date of such notice.” (Emphasis added.)
USF & G and Harrington do not deny that Couch is owed the $18,890 for work it completed. Their argument here is that Couch did not give the notice required by the above-quoted statute before bringing this civil action, and thus it was error to allow the interest and attorneys’ fees allowed by § 39-1-1.
On the other hand, Couch argues that because § 39-1-1 was not expressly incorporated in either the Samson-Harrington contract or the Harrington-Couch contract, it does not control. Rather, Couch main *616 tains that its contract with Harrington and the terms of the payment bond between Harrington and USF & G control.
The contract between Harrington and Couch contains this language:
“Payment to be made as follows:
“Monthly Estimates — Payment is due within 15 days of receipt of monthly estimate. Final retainage is due within 15 days of acceptance of job. Interest will accrue from the due date at the rate of 1½% per month (18% per annum).”
This provision was followed by an “Acceptance of Proposal,” which contained the following:
“(Should the undersigned fail to pay this indebtedness, or any part thereof, when due, the entire unpaid balance shall become due and payable; in which case the undersigned [Harrington] agrees to pay all cost of collecting, including a reasonable attorney's fee, plus interest at 1½% per month (18% per year) from due date.)”
As to the notice argument of Harrington and USF & G, Couch counters that the payment bond of USF & G itself specified how and to whom notice was to be given, viz.:
“PROVIDED, that beneficiaries or claimants hereunder shall be limited to the SUBCONTRACTORS, and persons, firms, and corporations having a direct contract with the PRINCIPAL or its SUBCONTRACTORS.

“PROVIDED FURTHER, that no suit or action shall be commenced hereunder by any claimant: (a) Unless claimant, other than one having a direct contract with the PRINCIPAL ... shall have given written notice to any two of the following: the PRINCIPAL, the OWNER, or the SURETY above named within ninety (90) days after such claimant did or performed the last of the work or labor_” (Emphasis added.)
Thus, it will be observed that the separate contract between Harrington and Couch contains notice provisions which are different from the notice provisions provided by § 39-1-1. It is also clear that Couch is a beneficiary under the terms of USF & G’s payment bond. It is not contested that after the expiration of 90 days from December 22, 1981, the date of Couch’s submission of its final estimate to Harrington, Couch gave notice by letter to the City of Samson and to Harrington requesting payment. Couch argues, therefore, that it has complied with its contract with Harrington and with the terms of the payment bond,[1] although it is clear that Couch did not give 45 days’ notice to the defendant USF & G before filing suit.
The controlling issue in this case is whether the provisions of § 39-1-1 requiring, among other things, 45 days’ written notice to the surety before suit may be brought to recover interest and attorneys’ fees under the bond, are due to be “read into the bond” as a matter of law when those provisions are not incorporated by the contracting parties by reference or otherwise into their contract. After a review of the authorities cited by the parties, we have concluded that such provisions are read into the contract, and thus are conditions precedent to the right of recovery under a government works contract bond falling within § 39-1-1.
The language of our Alabama cases supports this view. Universal Electric Construction Co. of Ala. v. Robbins, 239 Ala. 105, 194 So. 194 (1940), involved a similar situation, i.e., a suit on contract by a subcontractor- against its general contractor and the general contractor’s surety. Robbins was the subcontractor who furnished “labor, materials and supplies” to the general contractor, Universal, which had contracted to construct an electrical system for the City of Sheffield. The public works (government) statute, Acts of 1935, No. 39, p. 70, the predecessor to § 39-1-1, required that the contractor provide a payment bond *617 “with the obligation that such contractor ... shall promptly make payments to all persons supplying him ... with labor, materials ... or supplies for ... prosecution of the work.” However, the bond obtained by the general contractor contained this language: “... if the principal shall promptly make payment to all persons supplying labor in the prosecution of the work.” (Emphasis added.) No mention was made in the bond of any obligation to pay persons supplying the contractor with “materials ... or supplies for ... the prosecution of the work.” Nevertheless, this Court held that the provisions of the statute were to be read into the bond.
The plaintiff distinguished Robbins (and similar cases) by observing that the contract between Universal and the City of Sheffield was referred to in the bond and actually made a part of the bond, whereas, in this case, the contract was not referred to in the bond or made a part of it. That fact, however, was alluded to in Robbins, supra, at 239 Ala. 110, 194 So. at 198, but only to show that the surety was advised of the contents of the contract between the City and Universal.
In Robbins, this Court quoted from Globe Indemnity Co. v. Barnes, Tex.Com.App. 288 S.W. 121, 123 (1926) concerning the reasons why the terms of such a statute would be read into the bond:
“ ‘The execution of the bond conditioned as required by the statute is made a condition precedent to the right to commence such work. Such a contract can only be carried out lawfully after the execution of the bond as required by statute. The effect of the statute is to declare the liability of one executing the bond for such a contractor. The law will not compel one to enter into contract, but in a proper case it may fix the liability of one who voluntarily does contract. The principle is akin to the familiar rule that a common carrier will not be permitted to limit its common-law liability. That the Legislature did intend liability to exist in favor of those furnishing material or labor to the contractor, whether the bond expressly so agrees or not, is manifest by the authority conferred on such persons to sue the bondsmen. It is only where there is no express contractual liability that such portion of the statute could have any force or be needed. Where the bond'so stipulates, such parties have their cause of action without the statute. It is contractual. All persons are presumed to know the law and to contract with reference thereto. Every surety company or other person acting as surety for contractors in the construction of such public works must be held to know the requirements of the law, and, when he becomes surety upon the contractor’s bond in such a case, he does so with a full knowledge that the contract can only proceed upon a bond conditioned for the protection of labor and materialmen, and his executing as surety at all evidences indisputably his assent to be bound according to the liability prescribed by the statute. By executing the bond as surety, he necessarily assents that the terms of the statute become a part of his obligation. He will not be heard to say he did not agree to the terms of the statute. In no other way could his principal’s contract be carried out. The minor purpose to limit that liability is repugnant to the major purpose to execute the bond so as to enable the contractor to proceed. The attempted limitation is in violation of the statute, and therefore void. The statute will be read into the bond as though its terms had been strictly complied with.’
“There was, of course, no compulsion upon the surety to execute the bond, but it did so; and having done so, and knowing the purpose for which the bond was given, and being charged with knowledge of the law which required the bond, it, the bond must be ‘construed and applied as if they had complied with the law.’ In short, the law is written into the bond.”
This Court, at 239 Ala. Ill, 194 So. at 199, also referred to decisions from other jurisdictions holding to the same effect. We quote further from one of these, in *618 which materialmen brought actions against a general contractor and his surety:
“In the case of Guaranteed Gravel & Sand Co. v. Aetna Casualty & S. Co., 174 Minn. 366, 219 N.W. 546, 550, the court said: ‘The parties intended to comply with the statute. The contract and bond were made in reference to the statute. The purpose of the parties being established to be the same as the purpose of the statute, the joint purpose cannot be defeated by a failure to write into the contract and bond one of the provisions of the statute, whether such omission is due to the voluntary act of the parties or is attributable to their oversight or inadvertence. Under such circumstances the law imputes such provisions to the contract, whether written therein or not. In such a situation the contract is made in reference to the law, which is read into the contract, and out of which the liability arises. * * * The statute is a part of such contract whether embraced within the written language thereof or not, and its faithful performance means that the requirements of the law must be met.’ ”
And, in Lloyd Wood Construction Co. v. Con-Serv, Inc., 285 Ala. 409, 232 So.2d 649 (1970), an action brought by a subcontractor against his general contractor who had executed a bond under the then-applicable statute, Title 50, § 16, Alabama Code of 1940 (now § 39-1-1), this Court stated:
“[W]e think that the written notice required by Title 50, § 16 is a condition precedent to the maintenance of an action on the bond. We have held that compliance with similar statutory requirements of notice is a condition precedent to the maintenance of a suit. Dixon v. City of Mobile, 280 Ala. 419, 194 So.2d 825 (1967); City of Birmingham v. Weston, 233 Ala. 563, 172 So. 643, 109 A.L.R. 970 (1937).” 285 Ala. at 415, 232 So.2d at 655.
Thus, that case held that the subcontractor’s surety, having failed to give the statutory 45 days’ notice, could not maintain an action against the general contractor’s surety. It is true that in the opinion in that case, extended upon rehearing, this Court did state:
“We have said that when a bond contains conditions which incorporate the statutory law, a compliance with such conditions is a prerequisite to the maintenance of an action to recover on such bond. ...” 285 Ala. at 416-417, 232 So.2d at 656-657.
The authority cited for that statement, which is a general rule, was Scott v. United States Fidelity & Guaranty Co., 252 Ala. 373, 41 So.2d 298 (1949), an action brought upon a sheriff’s bond whose terms did include the statutory law as conditions precedent to liability. The citation of that decision in Lloyd Wood Construction Co., supra, however, was apparently made as an analogy and did not militate against the earlier statements in the opinion pertaining to public contractor bonds. The thrust of that decision was that a public contractor’s bond is given pursuant to the statute requiring it, now § 39-1-1, and thus that the notice requirement contained in the statute is a condition precedent to recovery under the bond.
To the same effect is Water Works, Gas & Sewer Board of Oneonta v. Buchanan Contracting Co., 294 Ala. 402, 318 So.2d 267 (1975), in which this Court considered the nature of the public works surety bond, at 294 Ala. 405-6, 318 So.2d at 269:
“This court has held that even when a bond under § 16 is not literally in statutory form, if it was given ‘for the purposes named in the statute and accepted and acted upon as such,’ the statute will be read into the bond. Royal Indemnity Co. v. Young & Vann Supply Co., 225 Ala. 591, 144 So. 532. And in American Casualty Co. of Reading, Pa., v. Devine, 275 Ala. 628, 157 So.2d 661, this court said:
“ ‘With reference to said act, [Tit. 50, § 16] this court has said that there was no compulsion on the surety to execute such a bond, but since the surety did so, knowing the purpose for which the bond was given and being charged *619 with knowledge of the law which required the bond, the bond must be construed and applied as if the parties making it had complied with the law. Universal Electric Const. Co. of Alabama v. Robbins, 239 Ala. 105, 194 So. 194. The bond shows on its face that it was executed in compliance with the statute and the court is authorized to read into it the provisions of the statute, “and give it the form and effect the statute contemplated, regardless of its contents.” 239 Ala. 109, 19If So. 198. In short the statute is written into the bond.
“ ‘We are of the opinion that if the statute is written into the bond as to the contractor and surety, the statute is also written into the bond as to the obligee and the suppliers of labor and materials who rely on the bond/ ” (Emphasis added.)
It follows from these authorities that Couch was required to give the statutory notice of 45 days to the surety, USF & G, before filing its action authorized by statute. Because Couch failed to perform this condition precedent, it was error to allow interest and attorneys’ fees in the judgment entered below. The same conclusion follows with regard to Couch’s claim for attorneys’ fees on this appeal. The judgment below, therefore, is reversed, and this cause is remanded for an order consistent with this opinion.
REVERSED AND REMANDED WITH DIRECTIONS.
TORBERT, C.J., and MADDOX, JONES and SHORES, JJ., concur.

. Couch argues that it was not required to give the 90 days’ notice because it had a "direct contract with the PRINCIPAL” but that it nevertheless gave the notice required under the bond.