318 So.2d 267

The WATER WORKS, GAS & SEWER BOARD OF the CITY OF ONEONTA, INC., a corporation

v.

P. A. BUCHANAN CONTRACTING CO., a partnership, etc., et al.

SC 1168, 1169.

Supreme Court of Alabama.

July 31, 1975.

Spain, Gillon, Riley, Tate & Etheredge and H. H. Grooms, Jr., Birmingham, for appellees.

Simmons, Torbert & Cardwell, Gadsden, for appellant.

**404**

MERRILL, Justice.

These appeals are from judgments granting the motion of United States Fidelity & Guaranty Company (USF&G), a third party defendant, for a summary judgment in cross-claim against it by The Water Works, Gas & Sewer Board of the City of Oneonta, hereinafter referred to as the Board. We affirm.

In·this case, we do not perceive any genuine issue as to any material fact, ARCP 56(c), and the only question presented is a question of law—whether, under the facts, USF&G is liable to the Board under the public works Completion and Performance Bond which it made for P. A. Buchanan Contracting Company, hereinafter referred to as Buchanan.

In August, 1952, Buchanan entered into a contract with the Board for the construction of a natural gas system for the City of Oneonta. USF&G executed the statutory public works Completion and Performance Bond and the Labor and Materials Bond. Goodwin Engineers of the South, Inc. and J. W. Goodwin Engineering Co. (also third party defendants) were the project engineers.

Buchanan completed the work; it was approved and accepted and Buchanan was paid in full under the terms of the contract in 1953.

On March 7, 1969, some 16 years later, a pipe exploded and damaged a building owned by Dorothy Gartrell. Her suit is S. C. 1168. Her husband, Dr. L. S. Gartrell, was a tenant in the building and his suit is S.C. 1169. The basis of each suit against the Board, Buchanan and the engineers was that the pipe was negligently laid and

as a proximate consequence the building was damaged, and in S.C. 1169, Dr. Gartrell's practice was disrupted and records destroyed.

The Board filed a third-party summons and complaint against Buchanan, USF&G and the engineers. The engineers also filed cross-complaint against USF&G. USF&G filed a motion for summary judgment accompanied by affidavits. The Board filed its opposition to the motion.

The trial court found in favor of USF&G as to the cross-claims of the Board and the engineers, and rendered a summary judgment in favor of USF&G as to the Board and the engineers. Only the Board appealed.

The Board's position is expressed in brief as follows:

"The pleadings consisting of the summons and complaint and third-party complaints and cross-claims in the transcript are all based on the claim by Appellant [the Board] here in that the performance bond is a common law bond and the contract between Appellant and P. A. Buchanan Contracting Company is made a part thereof, which includes page 11 of this contract. Accordingly, the question is whether or not it is a common law bond and whether the contract and bond are read together to require United States Fidelity & Guaranty Company to indemnify Appellant from any loss."

The undisputed evidence is that the bond in question was required and given under the provisions of Tit. 50, § 16, Code 1940, which provides in pertinent part:

"Any person, firm or corporation entering into a contract with the state or any county or municipal corporation or subdivision thereof in this state for the repair, construction or prosecution of any public buildings or public work, highways or bridges, shall be required, before commencing such work, to execute a performance bond, with penalty equal to fifty percent of the amount of the contract price, * * *

"The contractor shall immediately after the completion of the contract give notice of said completion by an advertisement in some newspaper of general circulation published within the city or county wherein the work has been done for a period of four successive weeks. In no instance shall a final settlement be made upon the contract until the expiration of thirty days after the completion of same. * * *'"

It is undisputed that these requirements were met.

■ This statute, Alabama's public works bond statute, enacted in 1927 and amended in 1935, is patterned after the Miller Act, Tit. 40, §§ 270a & 270b, U.S.C.A. In *State v. Southern Surety Co.,* 221 Ala. 113, 127 So. 805 (1930), this court, after comparing our statute with the federal statute in parallel columns, stated in part:

"The doctrine that a Legislature, in enacting a statute from another jurisdiction, enacts it with its authoritative interpretation, is universal and firmly established.

\* \* \* \* \* \*

" * * * The rule is that the borrowed statute is presumed to come with its authoritative interpretation. We have cited our case to such effect."

That decision was followed in *National Surety Corporation v. Wunderlich* (8th Cir.), 111 F.2d 622 (1940), where our public works statute was being construed and applied.

■ It is clear that a public works performance bond required by Tit. 50, § 16, carries with it the federal interpretation of the Miller Act.

■ This court has held that even when a bond under § 16 is not literally in statutory form, if it was given "for the purposes named in the statute and accepted and acted upon as such," the statute will be read into the bond. *Royal Indemnity Co.*

v. *Young & Vann Supply Co.,* 225 Ala. 591, 144 So. 532. And in *American Casualty Co. of Reading, Pa. v. Devine,* 275 Ala. 628, 157 So.2d 661, this court said:

"With reference to said act, [Tit. 50, § 16] this court has said that there was no compulsion on the surety to execute such a bond, but since the surety did so, knowing the purpose for which the bond was given and being charged with knowledge of the law which required the bond, the bond must be construed and applied as if the parties making it had complied with the law. *Universal Electric Const. Co. of Alabama v. Robbins,* 239 Ala. 105, 194 So. 194. The bond shows on its face that it was executed in compliance with the statute and the court is authorized to read into it the provisions of the statute, 'and give it the form and effect the statute contemplated, regardless of its contents.' 239 Ala. 109, 194 So. 198. In short the statute is written into the bond.

"We are of opinion that if the statute is written into the bond as to the contractor and surety, the statute is also written into the bond as to the obligee and the suppliers of labor and materials who rely on the bond."

■ A public works bond surety is not liable to third parties for injuries caused by negligence of the contractor-principal. The general rule is stated in 63 C.J.S. Municipal Corporations § 1172, p. 859:

"A bond to secure the performance of a municipal improvement contract is for the benefit and protection of the city and all property owners interested in the improvement, but it does not cover the claims of adjoining landowners for torts committed by the contractor in the performance of the work even though the contract provided that the contractor and his surety should be responsible for all damage caused by the contractor's operations. * * * "

Many federal court cases support this principle, some of which are: *United States v.*

*Fidelity & Deposit Co. of Maryland* (D.C., La.), 144 F.Supp. 322; *United States v. Mass. Bonding & Insuring Co.* (6th C.A.), 18 F.2d 203; *United States for use of Moran Towing Corp. v. Hartford Accident & Indemnity Co.* (D.C.R.I.), 204 F.Supp. 353, and *Tri-State Insurance Co. v. United States* (8th C.A.), 340 F.2d 542.

In *Stearns Law of Suretyship,* 5th Ed., § 8.13, p. 269, the following appears: "Attempts have been made under statutory bonds to hold the surety for torts of the contractor or his employees. These attempts have been uniformly unsuccessful."

All the authorities cited supra deal with either the performance bond or the labor and materials bond required by Tit. 50, § 16. These bonds are not public liability and property insurance.

■ The undisputed evidence is that Buchanan "took out a policy of public liability and property damage insurance with Liberty Mutual Insurance Company" and that this "policy remained in force and effect throughout the construction of the gas system in question." It is also undisputed that USF&G did not furnish any liability insurance but furnished only the completion and performance bonds and the labor and materials bonds and that no claim had been made on either of the bonds either against the contractor Buchanan or USF&G in connection with completion and performance or payment for labor and materials.

The contract between the Board and Buchanan provided in part:

*"1.15 SAFETY PRECAUTION AND INSURANCE COVERAGE:*

"(1.15a) The Contractor shall, at his own expense, employ a sufficient number of night guardmen, erect necessary barricades and maintain an adequate number of danger lights or flags for public safety. Burning night flares shall be placed along open ditches at a suitable spacing not to exceed 50 feet on centers, and shall burn from sunset to sunrise.

"(1.15b) The Contractor agrees to take out and carry adequate public liability and property damage insurance and to hold the Owner and the Owner's consulting engineers, J. W. Goodwin Engineering Company, the individual partners and Goodwin Engineers, Inc. harmless from any and all claims for damages which may result either directly or indirectly from the construction of any part of the work covered by this contract resulting from failure of material, inferior workmanship, neglect, obstruction of streets, excavation, collapsing structures, floating of structures, water, breaking or eruption of pipe lines, explosions, fires and any and all other causes which may result from the construction of this project by the Contractor or any acts either directly or indirectly by the Contractor, his sub-Contractors, his agents or employees, which insurance shall be for the period covered by this contract. Copies of evidence of this insurability shall be furnished to the engineers prior to the beginning of construction. However, regardless of not being furnished certificate of the insurability shall not relieve the contractor or the suretor from liability for the faithful compliance of this provision of the contract and the contractor and the suretor shall be liable for the full provisions of this paragraph as part of the completion and performance bond requirements of this contract."

The completion and performance bond (Board's Exhibit "C") executed by the contractor and USF&G read:

### "COMPLETION AND PERFORMANCE BOND

"KNOW ALL MEN BY THESE PRESENTS:

"THAT *P. A. Buchanan Contracting Company* as Principal, hereinafter called Contractor, and *United States Fidelity & Guaranty Company* Hereinafter called Surety, are held and firmly bound unto *Waterworks and Gas Board of the City of Oneonta* as Obligee, hereinafter called

Owner in the amount of *Six-Hundred-Seventy-Eight-Thousand-Four-Hundred-Forty-Nine-Dollars Twenty-Five-Cents ($678,449.25).* for the payment whereof Contractor and Surety bind themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents. WHEREAS, Contractor has by written agreement dated *August 15th,* 1952, entered into a contract with Owner for *A Natural Gas System for the City of Oneonta, Alabama.* In accordance with drawings and specifications or approved amendments thereto prepared by The Owner's Engineers, which contract is by reference made a part hereof, including all the obligations thereunder, and is hereinafter referred to as the Contract.

NOW, THEREFORE, The condition of this obligation is such that, if Contractor shall promptly and faithfully perform said contract, including all the obligations thereunder, then this obligation shall be null and void; otherwise it shall remain in full force and effect. Whenever Contractor shall be, and declared by Owner to be in default under the Contract, or any part thereof, the Owner having performed Owner's obligations thereunder, the Surety may promptly remedy the default, or shall promptly at Owner's option

"(1) Complete the Contract in accordance with its terms and conditions,

OR

"(2) Obtain a bid or bids for submission to Owner for completing the Contract in accordance with its terms and conditions, and upon determination by Owner and Surety of the lowest responsible bidder, arrange for a contract between such bidder and Owner and make available as work progresses (even though there shall be a default or a succession of defaults under the contract or contracts of completion arranged under this paragraph) sufficient funds to pay the cost of completion or any obligations thereunder.

**408**

"Any suit under this bond must be instituted before the expiration of two (2) years from the date on which final payment under the Contract falls due.

"SIGNED AND SEALED THIS *15th* DAY OF *Aug* A.D., 1952."

This is an ordinary performance bond required under Tit. 50, § 16.

The common practice of referencing in the surety bond the construction contract between the Board and the contractor does not change a Tit. 50, § 16 statutory performance and completion bond into either a common-law bond or a liability insurance policy for the payment of tort claims. *United States v. Mass. Bonding & Ins. Co.,* supra; *United States for use of Moran Towing Corp. v. Hartford Accident & Indemnity Co.,* supra; *Kniess v. American Surety Co. of New York,* 239 Wis. 261, 300 N.W. 913.

The trial court correctly held that, as a matter of law, the motion for summary judgment was proper in this case.

Affirmed.

HEFLIN, C. J., and MADDOX, JONES and SHORES, JJ., concur.