TORBERT, Chief Justice,
dissenting.
I respectfully dissent from the majority’s holding in this case.
Suit was originally filed against both USF&G, the liability insuror, and Travelers Indemnity Company, the surety on the performance bond. Together these two companies provided the insurance required by the State for the project. We are not here concerned with the obligations of Travelers, but only with those of USF&G under its liability policy.
The majority quotes the contract entered into by the State of Alabama and Southeast whereby Southeast agreed to obtain insurance coverage for property damage “arising out of acts or omissions at the designated job site which are related to or are in connection with the work.” The majority goes on to read this contract provision into the contract for insurance negotiated between Southeast and USF&G. It is hornbook contract law that someone who is not a party to a contract cannot be bound by the contract. See, e. g., Calhoun County v. Art Metal Construction Co., 152 Ala. 607, 44 So. 876 (1907); Cowley v. Shelby, 71 Ala. 122 (1881); Birmingham Waterworks Co. v. Brooks, 16 Ala.App. 209, 76 So. 515 (1917). Therefore, there must be some compelling circumstance present before a party is bound by contract terms to which he did not agree.
We found such a compelling circumstance in the case of performance bonds in Royal Indemnity Co. v. Young & Vann Supply Co., 225 Ala. 591, 144 So. 532 (1932). The compelling circumstance justifying the addition of contract terms to which the insu-ror had not agreed was the existence of a statute, now found in Code 1975, § 39-1-1, setting out in detail the type of performance bond required of companies contracting to do work for the State of Alabama, and the terms that such a bond must contain. Even so, before the statute may be “read into” the performance bond, the bond must show on its face that it was executed in compliance with the statute. Waterworks, Gas & Sewer Board of Oneonta v. P. A. Buchanan Contracting Co., 294 Ala. 402, 318 So.2d 267 (1975); American Casualty Co. v. Devine, 275 Ala. 628, 157 So.2d 661 (1963).
There is no statute setting out the requirements a liability insurance policy must meet for projects contracted for with the State. The insurance requirements for the job involved in the present case were merely set out in the contract between the State and Southeast, and USF&G cannot be bound by a contract to which it was not a party. USF&G, therefore, is only bound by the provisions of its own policy.
In the liability insurance policy entered into between USF&G and Southeast, USF&G assumed liability for “all sums which the Insured shall become legally obligated to pay as damages because of A. bodily injury or B. property damage to which this insurance applies, caused by an occurrence." (Emphasis added.) “Occurrence” is defined in the policy as “an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the Insured.” (Emphasis added.) The language in the policy clearly states that only unintentional or negligent conduct was to be covered. The termination of the restoration efforts at the lake was clearly an intentional act. Southeast did not “accidentally” cease work and remove its machinery from the area; it deliberately did so. Since the policy only covers damages “neither expected nor intended from the standpoint of the Insured,” these acts are clearly outside the scope of the policy, and USF&G is not liable for them.
*285 The only possible “occurrence” was the original silting of the lake. The subsequent clean-up effort was only a continuation of the original occurrence. Since USF&G was absolved from liability for this occurrence, due to Southeast’s failure to properly notify USF&G of the Club’s claim, liability cannot be revived by Southeast’s subsequent deliberate abandonment of the clean-up efforts it had undertaken.
Because of the foregoing, I would affirm the decision of the trial court, and I therefore dissent.
FAULKNER and EMBRY, JJ., concur.